**James BURGESS, Appellant,**

v.

**Maria Lourdes JARAMILLO a/k/a Mary Lou Jaramillo, Appellee.**

No. 02–95–158–CV.

Court of Appeals of Texas, Fort Worth.

Jan. 11, 1996.

Rehearing Overruled Feb. 15, 1996.

---

Terry S. Boone, Betty S. Springer, Haynes and Boone, Fort Worth, for Appellant.

Rosendo Rodriguez, Jr., Anderson, Anderson & Rodriguez, Wichita Falls, for Appellee.

Before DAY, LIVINGSTON and HOLMAN, JJ.

## OPINION

DAY, Justice.

This is an interlocutory appeal from the denial of a motion for summary judgment. Section 51.014(5) of the Texas Civil Practice and Remedies Code permits such an appeal where the motion for summary judgment is based on an assertion of immunity by an individual who is an officer or employee of a political subdivision of the State. TEX.CIV. PRAC. & REM.CODE ANN. § 51.014(5) (Vernon Supp.1996). The assertion of immunity was

made by appellant James Burgess, who is the Director of the Human Resources Department for the County of Wichita. Because we find that Burgess's duties in this case were ministerial rather than discretionary, we affirm the trial court's denial of summary judgment on the claim of official immunity.

## RELEVANT FACTS

In February 1993, appellee Maria Lourdes Jaramillo was hired by the Wichita County Court Administrator as a secretary/assistant. The unique structure of the county government authorizes both the Wichita County Human Resources Department and the Wichita County Treasurer's Department to oversee the completion of the initial employment paperwork, including the completion of I–9 immigration forms as federally mandated by the Immigration Reform and Control Act of 1986.[1]

In the present case, Jaramillo went to the Treasurer's Department on February 9, 1993 to complete her initial paperwork. For the purposes of showing employment eligibility, Jaramillo presented to the Chief Deputy Treasurer a driver's license and a laminated social security card. Unsure of the acceptability of the laminated social security card as proof of employment eligibility, the Chief Deputy Treasurer sought advice from Burgess because she felt that Burgess, as Wichita County Human Resources Director, had more training in this area.

Burgess noted the social security card "did not look right" and consulted resource materials published by the federal government which indicated that, at least in some circumstances, laminated social security cards are unacceptable as proof of employment eligibility. Burgess met with Jaramillo and Jaramillo's supervisor, explained he could not accept the laminated social security card and asked Jaramillo to go to the local Social Security Administration office and get a new card. Jaramillo tendered her Alien Registration Receipt Card I–551, which is commonly referred to as a "Green Card," to Burgess to satisfy the I–9 requirements. An I–551 card is listed as a document which

1. *See* 8 U.S.C. § 1324a (Supp.1995); 8 C.F.R. § 274a.2 (1995).

establishes the I–9 requirements for both identity of the individual and employment eligibility. 8 C.F.R. § 274a.2 (1995). Burgess made a copy, returned the I–551 card to Jaramillo, and then went to the local office of the Social Security Administration to confirm his belief he could not accept the laminated social security card as valid proof of employment eligibility. Following this confirmation, Burgess then wrote a letter to Jaramillo stating that the documents presented were not sufficient to establish her eligibility for employment. In this letter, Burgess said Jaramillo's I–551 card was not valid due to the expiration dates, and he asked her to produce different valid documents in order to continue her employment with Wichita County. Burgess claims he compared the I–551 to the various samples in the government handbook and could not accurately determine an expiration date because he mistakenly referred to it as a Conditional Resident Alien Card instead of a Resident Alien Card. Burgess noted that he reviewed the information on the different pictures of the I–551 cards in closer detail with one of the County Commissioners and told the commissioner he was not concerned with the I–551, that his concern was with the social security card. When asked by the commissioner if Jaramillo's I–551 appeared to be valid, Burgess replied it looked valid on its face, but that he was not an expert on I–551 cards. Burgess further explained that he did not have any concerns about the validity of the I–551 because he did not receive any confirmations or denials about the I–551 from the Social Security Administration office and the closest office of the Immigration and Naturalization Service was in Dallas. Burgess noted further that, because most resident aliens use a social security card and driver's license to establish employment eligibility, he believed he had little reason to see an I–551 and most companies would not want to know this information.

The following morning Jaramillo presented to Burgess a receipt from the Social Security Administration indicating that she had applied for a new card. When Burgess was again asked about his concerns with Jaramillo's I–551, Burgess stated that he was not an immigration expert and all that he needed at the moment was the social security card information, and because that information had now been provided, the matter was put to rest.

Jaramillo subsequently brought suit against Burgess, in his individual capacity, claiming a state cause of action for defamation and claims based on federal Civil RICO Act violations and racial discrimination. The federal claims were later nonsuited and Burgess moved for summary judgment on the defamation claim, asserting official immunity. After a hearing, the trial court denied the motion for summary judgment.

In four points of error, Burgess asserts the trial court erred in: (1) denying official immunity to Burgess; (2) misinterpreting the term "discretionary act" in a manner contrary to its definition used for official immunity; (3) holding there was a genuine issue of material fact as to whether Burgess acted in good faith; and (4) using the affidavits filed by Jaramillo to find material fact disputes.

## DISCUSSION

### The Standard of Review

■ The applicable standard of review for summary judgment is familiar: (1) the movant for summary judgment has the burden of showing that there is no issue of material fact and that he is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true; (3) every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in her favor. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). When a defendant moves for summary judgment on the basis of an affirmative defense, he must conclusively prove all essential elements of that defense. *Swilley v. Hughes*, 488 S.W.2d 64, 67 (Tex.1972).

■ Official immunity[2] is an affirmative defense; thus, the burden is on Burgess to

---

2. This concept is also called "qualified immunity" or "quasi-judicial immunity." *See Travis v. City of Mesquite*, 830 S.W.2d 94, 100 n. 2 (Tex. 1992) (Cornyn, J., concurring). Throughout this opinion, it is referred to as official immunity.

establish all elements of the defense. *City of Lancaster v. Chambers,* 883 S.W.2d 650, 653 (Tex.1994). Government employees are entitled to official immunity from suit arising from the performance of their (1) discretionary duties in (2) good faith as long as they are (3) acting within the scope of their authority. *Id.* Jaramillo concedes that Burgess's actions occurred within the course and scope of his employment as Director of Human Resources for Wichita County. The question on appeal is, then, did Burgess establish as a matter of law his non-liability for the alleged defamation by reason of his exercise of discretionary duties in good faith.

*Discretionary versus Ministerial Act*

Because the question to be decided in this appeal is whether Burgess is entitled to immunity from suit and liability from the tortious acts alleged against him, we must determine whether his acts were ministerial or discretionary.

 As a general rule, official immunity to suit attaches to a government employee's official actions only when the employee's job requires the exercise of personal judgment and discretion. *Travis v. City of Mesquite,* 830 S.W.2d 94, 102 (Tex.1992) (Cornyn, J., concurring). In contrast, a government employee's performance of duties that are merely ministerial in nature is not cloaked with official immunity. *Id.* Labelling an officer's acts as discretionary is probably only a shorthand notation for a more complex policy decision. *Kassen v. Hatley,* 887 S.W.2d 4, 9 (Tex.1994). Put differently, government employees are subject to suit if their acts are "ministerial" acts involving mere obedience to orders or performance of duties requiring nongovernmental choices, as opposed to "discretionary" acts requiring personal deliberation, decision, and judgment involving the government. *City of Irving v. Pak,* 885 S.W.2d 189, 192 (Tex.App.—Dallas 1994, writ dism'd w.o.j.); *Tyrrell v. Mays,* 885 S.W.2d 495, 497 (Tex.App.—El Paso 1994, writ dism'd w.o.j.).

 This distinction between official duties which are discretionary and those which are ministerial in nature has been stated in these words:

A ministerial act is one which a person performs in a given state of facts and in a prescribed manner in obedience to the method of legal authority, without regard to his own judgment on the propriety of the act being done. The distinction between ministerial and judicial and other official acts is that, where the law prescribes and defines the duty to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment, the act is ministerial; but, where the act to be done involves the exercise of discretion or judgment *in determining whether the duty exists,* it is not to be deemed ministerial.

*Miller v. State,* 53 S.W.2d 838, 840 (Tex.Civ. App.—Amarillo 1932, writ ref'd) (emphasis added). The distinction between these two categories is often one of degree, since any official act that is ministerial will still require the actor to use some discretion in its performance. *Chapman v. Gonzales,* 824 S.W.2d 685, 687 (Tex.App.—Houston [14th Dist.] 1992, writ denied). Thus, a significant aspect of the process of determining whether the act is ministerial or discretionary involves searching for a law or regulation controlling the acts of the officer in a particular situation. *Harris County v. DeWitt,* 880 S.W.2d 99, 101 (Tex.App.—Houston [14th Dist.] 1994), *aff'd,* 904 S.W.2d 650 (Tex.1995).

 The controlling statute in this case is the Immigration Reform and Control Act, and the specific language relating to document inspection provides:

The [employer] must attest, under penalty of perjury and on a[n] [I–9] form ... that it has verified that the individual is not an unauthorized alien by examining—

(i) a document described [which establishes both employment authorization and identity], or

(ii) a document described [which evidences employment authorization only] and a document described [which establishes the identity of the individual only].

A person or entity has complied with the requirement of this [statute] with respect to examination of a document if the document reasonably appears on its face to be genuine. If an individual provides a document or combination of documents that reasonably appears on its face to be genuine and that is sufficient to meet the requirements of [this statute], nothing in this paragraph shall be construed as requiring the person or entity to solicit the production of any other document or as requiring the individual to produce such another document.

8 U.S.C. § 1324a(b)(1)(A) (Supp.1995). Clearly, the statute defines the duty to be performed and does not leave the employer any discretion to determine whether a duty exists to examine the requisite documentation. The only question remaining, therefore, is whether the statute defines the duty to be performed with such precision and certainty as to leave nothing to the exercise or judgment of the employer, thus making the act ministerial. We hold that the act is precise enough to make the employer's duty ministerial in nature.

Discussing the intent of Congress and the legislative history of section 1324a, the Ninth Circuit Court of Appeals said:

> The Judiciary Committee Report on the statute shows that Congress did not intend the statute to cause employers to become experts in identifying and examining a prospective employee's employment authorization documents. The Judiciary Committee Report states that "[i]t is not expected that employers ascertain the legitimacy of documents presented during the verification process." H.R.Rep. No. 99–682 (Part 1), 99 Cong.2d Sess. 61 (1986). The Report goes on to say that "[t]he 'reasonable man' standard is to be used in implementing this provision and the Committee wishes to emphasize that documents that reasonably

appear to be genuine should be accepted by employers without requiring further investigation of those documents."

*Collins Foods Int'l, Inc. v. United States Immigration & Naturalization Serv.,* 948 F.2d 549, 554 (9th Cir.1991). It is clear, then, that the statute does not authorize employers to become "junior agents" of the Immigration and Naturalization Service. The statute strictly defines an employer's duty as not including a rigorous inspection but only a verification that documents were examined and appear reasonable on their face. *Id.*[3] Burgess's concern that the Social Security Administration had not provided him any confirmation or denial about Jaramillo's I–551 card and that the closest office of the Immigration and Naturalization Service was in Dallas appears to be precisely the kind of rigorous inspection and investigation the statute seeks to proscribe. Once an employer is presented documentation meeting the strictures of the statute, the inquiry should cease. The statute is certain in this regard and leaves absolutely nothing to the judgment or discretion of the actor.

Discretionary acts are those related to determining what the policy of the governmental unit will be, but the controlling statute in this case leaves no room for governmental judgment. Congress has already determined the policy and has left to employers the mere ministerial function of carrying-out the specifics of its policy decision. The actor is left no choice in the performance of his duty, he is required to be obedient and examine the required documents and accept documentation that reasonably appears valid on its face and relates to the individual.

Appellant argues that our focus should be on whether the statute imparts upon him the duty to determine the sufficiency of the documents presented, and that he exercised discretion in evaluating the validity of Jar-

---

**3.** *See also* National Lawyers Guild, *Immigration Law & Defense,* § 12.2 at 12–6, § 12.3(c) at 12–23 (1988) ("The *House Judiciary Report* indicated that documents that reasonably appear to be genuine should be accepted by employers without requiring further investigation. . . . Thus, employers do not have to become proficient in ascertaining documentary fraud and should not, for example, exercise the type of scrutiny that

alcoholic beverage license vendors must use in checking identification of minors."); Nancy Jo Merritt, *The Immigration Reform & Control Act of 1986: What Employers Need to Know,* Ariz.Bar J., April–May 1987 at 8, 10 ("[T]he employer is not expected to ascertain the 'legitimacy of the documents,' but only to examine them and note whether they are reasonable on their face.").

amillo's proof of employment eligibility. We disagree. In the performance of the duty prescribed by the statute, the actor is left no choice whether to accept documentation reasonably appearing on its face to be genuine. No investigatory duty was ever intended or allowed by Congress. By the very language of the statute an employer is forbidden to solicit or require additional or different documents when he has been presented with a document on the list that reasonably appears to be genuine. Such precision and certainty removes the exercise of judgment or discretion from the employer, or in this case, from the public official. Any discretion in the manner of performing the duty required by Congress does not rise to the level of that type of discretion capable of imparting immunity upon the governmental actor.

The difference of degree present in this case is analogous to that presented to the court in *Garza v. Salvatierra.* There, the parents of a child struck by a city bus sought to recover damages from the bus driver, who claimed immunity in his capacity as a government employee. The court noted that any discretionary act was made by the governmental unit that made the decision of the bus route and schedule; whereas, the driving of the bus along the determined route at the determined time, within the rules and regulations promulgated by the policy-makers was ministerial. *Garza v. Salvatierra,* 846 S.W.2d 17, 22 (Tex.App.—San Antonio 1992, writ dism'd w.o.j.). The actions of the bus driver in implementing the policy decisions did not involve governmental policy or judgment and were, therefore, susceptible to judicial scrutiny. *Id.* The court noted that the only judgment left to the driver was traffic judgment, not governmental judgment. *Id.* In language directly analogous to the present dispute, the court said:

> This Court need not decide whether a bus driver has discretion to make turns at any speed, whether he can change lanes or execute turns with safety, whether he should overtake or pass other vehicles, or any of the kinds of decisions alleged by appellant.... Those questions are answered by the trier of fact. The act of driving a bus is ministerial, not discretionary.

*Id.* Likewise, in the case at bar, the only judgment left to Burgess was akin to driving the bus; that is, ministerial judgment not governmental judgment. Burgess's duty in this case was to implement the policy decision made by Congress. Indeed, in executing the duties required by the statute in this case, Burgess perhaps was allowed to exercise less judgment than the bus driver. Simply, once Burgess was presented with documentation listed in the statute that reasonably appeared genuine on its face, Burgess's duty was complete. While the version of Jaramillo's social security card may not have reasonably appeared valid on its face due to lamination,[4] when Jaramillo tendered her I–551, which Burgess admitted reasonably appeared to be genuine on its face, Burgess had satisfied the requirements of the statute. Burgess himself admitted he was not concerned with the validity of the I–551, that it appeared valid on its face, but that his concern was with Jaramillo's social security card. Burgess's duty under the statute was to accept the I–551 if it reasonably appeared valid, the statute prohibits his further concern with any other documentation.

Further, Burgess's concern that he was not an immigration expert, or an expert on I–551 cards, and that once he was provided the social security information the matter was put to rest as far as he was concerned, was wholly outside of the ministerial nature of the duty required by Congress. It was Congress's clear intent that Burgess need not become an expert on these matters, but

---

4. Burgess determined Jaramillo's social security card was not adequate because it was laminated. We note that the handbook consulted by Burgess contains only one example of a social security card. As many as 16 valid versions exist, and not all are invalid if laminated. *See Collins Foods Int'l Inc. v. United States Immigration & Naturalization Serv.,* 948 F.2d 549, 554 (9th Cir. 1991). Because no reproduction of Jaramillo's social security card was included in the record, we cannot determine which possible version she possessed; however, we will presume that Burgess made a correct determination that Jaramillo's card was a version which is invalid when laminated.

rather perform his ministerial function of accepting a document reasonably appearing valid on its face and relating to the individual.

Additionally, Burgess's belief that most resident aliens used social security cards and driver's licenses to meet the statutory requirements, and his belief that he had little reason to see an I–551 or that most companies would not want to know this information is totally irrelevant to his duty under the statute to accept without further solicitation, inquiry, or investigation any of the listed documents which would satisfy the statute. An employer cannot require that the statute be satisfied with documentation of his choice, any of the listed documents are required to be accepted.

We find that Burgess has failed to establish as a matter of law that his conduct was discretionary in nature. He, therefore, has failed to establish, as a matter of law, his affirmative defense of official immunity. Points of error one and two are overruled.

### CONCLUSION

We hold that the duties imparted upon employers, including governmental employers, under section 1324a of the Immigration Reform and Control Act of 1986 are ministerial in nature and not discretionary. Therefore, the affirmative defense of official immunity is not available to Burgess. If Burgess, in the performance of his ministerial duty, committed a tort, he is responsible for the tort to the same extent as a person who holds no governmental position. Because of our determination that Burgess is not entitled to the affirmative defense of official immunity due to the ministerial nature of his duties in this case, we need not address his point of error regarding whether he established the good faith element of the immunity defense or his claim that the trial court erred in using affidavits filed by Jaramillo to find material factual disputes.

The judgment of the trial court is affirmed.