**CITY OF WICHITA FALLS, Appellant,**

v.

**Sherry Ann NORMAN and Freddie Ray Norman, Appellees.**

No. 2–97–162–CV.

Court of Appeals of Texas, Fort Worth.

Feb. 26, 1998.

William Andrew Messer, Wichita Falls, for Appellant.

James B. Ammons, Wichita Falls, for Appellees.

Before CAYCE, C.J., and RICHARDS and BRIGHAM, JJ.

## OPINION

RICHARDS, Justice.

This is an interlocutory appeal from the denial of a motion for summary judgment based on the assertion of official and sovereign immunity.[1] The assertion of immunity

---

1. *See* Tex. Civ. Prac. & Rem.Code Ann. § 51.014(5) (Vernon Supp.1998).

was made by the city of Wichita Falls ("the City") on behalf of its employee, Officer Russell Melvin ("Melvin"), in response to a lawsuit filed by Sherry Norman ("Norman") and her husband. In five points, the City argues that the trial court erred in denying its motion for summary judgment because (1) Norman's claim is barred by official and sovereign immunity; (2) all elements of official immunity were proven as a matter of law; (3) the element of discretionary duty was uncontested during the summary judgment proceedings; and (4) the element of good faith was proven as a matter of law. The City further complains that the trial court erred in refusing to rule on its objections to Norman's summary judgment evidence. Because we conclude that Melvin's duties were ministerial rather than discretionary, in this case, we affirm the trial court's denial of summary judgment on the City's claim of official immunity.

### Summary of Relevant Facts

On August 2, 1996, Melvin, a motorcycle patrol officer, was involved in an accident with a car driven by Norman. The exact cause of the accident is disputed, but both parties concede that Melvin was acting within the course and scope of his employment for the City when he struck Norman's car from behind. Norman averred that she was stopped in the southbound lane of Brook Street in Wichita Falls waiting to turn left with her brake pedal depressed and her left turn signal light flashing. She looked in her rear view mirror and saw no traffic behind her. About 35–45 seconds later, she again looked in her rear view mirror and saw the motorcycle coming at her, and almost instantly thereafter, felt the impact of the motorcycle as it hit the back of her car. She further averred that, before the motorcycle hit the back of her car, no cars passed around her in the right lane of traffic.

Norman also submitted the affidavit of Sheila Lagunas, who stated that just prior to the accident, she was driving south on Brook Street in the inside lane. Melvin was driving his motorcycle directly in front of her. Lagunas stated that Melvin repeatedly "looked off to the right" and "continued to look off to

his right even after passing through the light at Eleventh St[reet]" as he approached Norman's stopped car.

In his affidavit, Melvin stated that before the collision, he released the right-hand gas throttle of the motorcycle handlebars and tried to brake using both the hand brake of the front wheel and the foot brake of the back wheel. The rear of the motorcycle slid to the right, so Melvin released the brake and corrected its path. He then braked hard using both the hand brake and foot brake. This caused the front tire to lock, sending the motorcycle onto its left side and ejecting Melvin into the oncoming lane of traffic. The motorcycle then skidded into the rear bumper of Norman's car. Melvin averred that at the time of the accident, he was on routine patrol. He further stated:

> I was not under the obedience of any order given by any superior officer, but had complete discretion in my patrol duties. The actions I took prior to and during the time of this incident involved my personal deliberation, decision and judgment (*i.e.*, how to drive, which routes to take, when to enforce the law, and how to avoid Norman's vehicle—whether to turn right, turn left, slow down, speed up, stop, or any combination thereof).

### Procedural Background

Norman sued the City alleging that Melvin was negligent and that his negligence proximately caused her injuries and damages. The City filed a motion for summary judgment based on the doctrine of official immunity and derivatively, sovereign immunity. Norman filed a response stating, "It is undisputed that [Melvin] was acting within the course and scope of his employment during this time and may have been acting in a discretionary manner but the facts as to whether he was acting in good faith are disputed." At the summary judgment hearing on April 14, 1997, the trial court invited both parties to brief the issue of good faith by April 25, 1997.

The City filed a timely letter brief discussing only the issue of good faith. However, in her responsive letter brief, Norman argued for the first time that Melvin was acting in a

ministerial, rather than a discretionary function at the time of the accident. On May 16, 1997, the trial court denied the City's motion for summary judgment solely on that basis. The court refused to address the issue of good faith, concluding that it was immaterial because the City had not proven the discretionary element as a matter of law, and did not address the City's objections to Norman's summary judgment evidence.

## Standard of Review

In a summary judgment case, the issue on appeal is whether the movant met his summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. *See* TEX.R. CIV. P. 166a(c); *Cate v. Dover Corp.,* 790 S.W.2d 559, 562 (Tex.1990); *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979). The burden of proof is on the movant and all doubts about the existence of a genuine issue of a material fact are resolved against the movant. *See Acker v. Texas Water Comm'n,* 790 S.W.2d 299, 301–02 (Tex.1990); *Cate,* 790 S.W.2d at 562; *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.,* 391 S.W.2d 41, 47 (Tex.1965). Therefore, we must view the evidence and its reasonable inferences in the light most favorable to the nonmovant. *See Great Am.,* 391 S.W.2d at 47.

In deciding whether there is a material fact issue precluding summary judgment, all conflicts in the evidence will be disregarded and the evidence favorable to the nonmovant will be accepted as true. *See Harwell v. State Farm Mut. Auto. Ins. Co.,* 896 S.W.2d 170, 173 (Tex.1995); *Montgomery v. Kennedy,* 669 S.W.2d 309, 311 (Tex.1984).

■ A motion for summary judgment must present the grounds on which it is made. *See McConnell v. Southside Indep. Sch. Dist.,* 858 S.W.2d 337, 341 (Tex.1993). The motion must stand or fall on the grounds expressly presented therein. *See id.* Similarly, issues that a nonmovant contends avoid the movant's entitlement to summary judgment must be expressly presented by written answer to the motion or reference to sum-

mary judgment evidence. *See City of Houston,* 589 S.W.2d at 678.

■ The summary judgment will be affirmed only if the record establishes that the movant has conclusively proved all essential elements of the movant's cause of action or defense as a matter of law. *See id.* A defendant is entitled to summary judgment on an affirmative defense if the defendant conclusively proves all the elements of the affirmative defense as a matter of law such that there is no genuine issue of material fact. *See Randall's Food Mkts., Inc. v. Johnson,* 891 S.W.2d 640, 644 (Tex.1995). To accomplish this, the defendant-movant must present summary judgment evidence that establishes each element of the affirmative defense. *See Ryland Group, Inc. v. Hood,* 924 S.W.2d 120, 121 (Tex.1996).

■ Official immunity is an affirmative defense; thus, the burden is on the City to establish all elements of the defense. *See City of Lancaster v. Chambers,* 883 S.W.2d 650, 653 (Tex.1994). Government employees are entitled to official immunity from suits arising from the performance of their (1) discretionary duties in (2) good faith as long as they are (3) acting within the scope of their authority. *See id.* Norman concedes that Melvin's actions occurred within the course and scope of his employment with the City. The issue we must decide, then, is whether the City established as a matter of law that Melvin was exercising discretionary duties in good faith at the time the accident occurred.

■ The City argues that the trial court erred in considering the discretionary issue at all and in denying summary judgment on that basis because Norman conceded the discretionary element at the initial summary judgment proceeding. However, Norman's response to the City's motion for summary judgment states only that Melvin "*may have been acting in a discretionary manner* but the facts as to whether he was acting in good faith are disputed." [Emphasis added.] The burden was on the City to establish as a matter of law the discretionary function element as well as every other element of official immunity. *See id.* While Norman's ini-

tial response clearly focused on the good faith element of official immunity, her subsequent letter brief, filed at the trial court's request, fairly apprised the City and the court of the issue Norman now raises to defeat the summary judgment motion, i.e., that the City failed to prove the discretionary element of official immunity as a matter of law. *See City of Houston*, 589 S.W.2d at 678. Accordingly, the trial court properly considered the discretionary element of the City's claim of immunity. We overrule the City's fourth point.

### Discretionary Versus Ministerial Function

██ As a general rule, official immunity from suit attaches to a government employee's official actions only when that employee's job requires the exercise of personal judgment and discretion. *See Travis v. City of Mesquite*, 830 S.W.2d 94, 102 (Tex.1992) (Cornyn, J., concurring); *Burgess v. Jaramillo*, 914 S.W.2d 246, 249 (Tex.App.—Fort Worth 1996, no writ). On the other hand, a government employee's performance of duties that are merely ministerial in nature is not cloaked with official immunity. *See id.*

██ Our focus is whether Melvin was performing a discretionary function while operating his motorcycle. The question of whether Melvin was negligent is immaterial in determining whether he was performing a discretionary function; if he was engaging in a discretionary act, then he is protected by official immunity, regardless of whether he was negligent in the exercise of his public duties. *See Chapman v. Gonzales*, 824 S.W.2d 685, 687 (Tex.App.—Houston [14th Dist.] 1992, writ denied). The purpose of official immunity is to "free government officials to exercise their duties without fear of damage suits that would consume their time and energy and the threat of which might appreciably inhibit the fearless, vigorous, and effective administration of policies of government." *Victory v. Bills*, 897 S.W.2d 506, 508 (Tex.App.—El Paso 1995, no writ). It was not designed to "protect erring officials." *Kassen v. Hatley*, 887 S.W.2d 4, 8 (Tex.1994).

██ Government employees are subject to suit if their acts are ministerial, involving mere obedience to orders or performance of duties requiring nongovernmental choices, as opposed to discretionary acts, requiring personal deliberation, decision, and judgment involving the government. *See Burgess*, 914 S.W.2d at 249; *City of Irving v. Pak*, 885 S.W.2d 189, 192 (Tex.App.—Dallas 1994, writ dism'd w.o.j.). The distinction between official duties that are discretionary and those that are ministerial in nature has been described as follows:

> A ministerial act is one which a person performs in a given state of facts and in a prescribed manner in obedience to the method of legal authority, without regard to his own judgment on the propriety of the act being done. The distinction between ministerial and judicial and other official acts is that, where the law prescribes and defines the duty to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment, the act is ministerial; but, where the act to be done involves the exercise of discretion or judgment *in determining whether the duty exists*, it is not to be deemed ministerial.

*Miller v. State*, 53 S.W.2d 838, 840 (Tex.Civ. App.—Amarillo 1932, writ ref'd) (emphasis added).

██ The distinction between these two categories is often one of degree because any official act that is ministerial will still require the actor to use some discretion in its performance. *See Burgess*, 914 S.W.2d at 249. Allowing a party to limit the focus of our inquiry simply to any minor decision requiring some judgment prior to acting "would, in effect, merge the discretionary function element of the official immunity defense into the third element of the defense, whether the employee was acting within the scope of authority. An official cannot be immune from liability simply because he is on duty." *Woods v. Moody*, 933 S.W.2d 306, 308 (Tex.App.—Houston [14th Dist.] 1996, no writ).

██ Situations where peace officers have been found to have official immunity in the operation of their motor vehicles include, but are not limited to, high speed chases, investi-

gations, and traffic stops. *See id.* at 308; *see, e.g., City of Lancaster,* 883 S.W.2d at 653–55 (high speed chase); *Texas Dep't of Pub. Safety v. Perez,* 905 S.W.2d 695, 698–700 (Tex.App.—Houston [14th Dist.] 1995, writ denied) (traffic stop); *City of Hempstead v. Kmiec,* 902 S.W.2d 118, 120–22 (Tex. App.—Houston [1st Dist.] 1995, no writ) (investigation preceding arrest); *Harris County v. Ochoa,* 881 S.W.2d 884, 887–89 (Tex. App.—Houston [14th Dist.] 1994, writ denied) (high speed chase). Operating a car or motorcycle in a non-emergency situation, unlike a high speed chase or traffic stop, does not require personal deliberation or the exercise of professional expertise, decision, or judgment involving the government. *See Burgess,* 914 S.W.2d at 249; *Woods,* 933 S.W.2d at 308. To the contrary, operating a motor vehicle is ministerial because it requires a person to "perform[ ] in a given state of facts and in a prescribed manner in obedience to the method of legal authority, without regard to his own judgment on *the propriety* of the act being done." *Burgess,* 914 S.W.2d at 249 (*quoting Miller,* 53 S.W.2d at 840) (emphasis added).

■ Motorcycle police officers, like ordinary citizens, must obey traffic laws in operating their vehicles. They do not have discretion in determining *whether the duty exists* to follow such regulations. *See Miller,* 53 S.W.2d at 840. In *Garza v. Salvatierra,* the court made the distinction between discretionary and ministerial acts of a city bus driver as follows:

Discretionary acts are those related to determining what the policy of the governmental unit will be, but do not extend to the carrying out of the specifics of particular policies or exercise of "professional" or "occupational" discretion. Policy decisions are made by the governmental agencies or units, which require governmental judgment. Therefore, a decision as to whether a bus travels a given route on a certain day, and at a specific time is discretionary and is not made by bus drivers. Ministerial functions involve carrying-out the specifics of a policy decision, such as the *driving* of a bus along a given route on a certain day, at a specific time, and in accordance with the law, and the driving rules and regulations promulgated by the policy-decision makers. The implementation actions by a bus driver in driving the bus, and therefore, carrying-out the policy decisions does not involve governmental policy or judgment, and, consequently is susceptible to judicial examination. The only judgment left to the bus driver is traffic judgment, not governmental judgment.... The act of driving a bus is ministerial, not discretionary.

*Garza v. Salvatierra,* 846 S.W.2d 17, 22 (Tex. App.—San Antonio 1992, writ dism'd w.o.j.) (citation omitted).

The City relies heavily on *City of Lancaster* for the proposition that Melvin was engaged in discretionary acts at the time of the accident, such as determining which route to follow, which speed to drive, and how closely to follow. *See City of Lancaster,* 883 S.W.2d at 655. However, that case is easily distinguished from the present case in that it involved a high speed chase, one of the exceptions noted by the *Woods* court where an officer would be performing a discretionary, rather than a ministerial, act. *See Woods,* 933 S.W.2d at 308. In this case, Melvin was not engaged in a pursuit or high speed chase, was not facing an emergency situation, and was not conducting an investigation or traffic stop. In fact, there is no evidence to suggest that Melvin was performing any discretionary act at the time of the accident. He was merely exercising traffic judgment while on official non-emergency business. The mere fact that Melvin was on patrol at the time he ran his motorcycle into the back of Norman's car does not automatically afford him the protection of official immunity. *See id.*

■ This court need not determine whether a motorcycle officer has discretion to make turns at any speed, whether he can change lanes or execute turns with safety, whether he should overtake or pass other vehicles, or any of the kinds of discretionary traffic decisions alleged by Melvin in his affidavit. Those questions are answered by the trier of fact. We agree with the *Woods* court when it stated, "absent special circumstances that suggest the officer was performing a discretionary function, such as engag-

ing in a high speed chase, we hold that an officer driving a motor vehicle while on official, non-emergency business is performing a ministerial act." *Id.* Our decision not to apply official immunity in the present case should not serve to discourage police officers from carrying out the *fearless, vigorous, and effective administration* of their duties. *See Victory,* 897 S.W.2d at 508.

## Conclusion

We conclude that the City has failed to prove as a matter of law that Melvin was acting in a discretionary manner. The City has, therefore, failed to establish as a matter of law the affirmative defense of official immunity and, derivatively, sovereign immunity. We overrule the City's first and second points. Because the City failed to establish the discretionary function element of official immunity, we need not address the City's fifth point regarding the good faith element of the defense or the City's third point regarding the trial court's refusal to rule on the City's objections to Norman's summary judgment evidence that addressed the issue of good faith. The judgment of the trial court is affirmed.