NUMBER 13-01-035-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG

________________________________________________________________________

MKEYISHA DETRICK PHIPPS, INDIVIDUALLY AND

NEXT FRIEND FOR DARIUS PHIPPS, A MINOR CHILD, Appellant,

v.


THE CITY OF LUFKIN, TEXAS, Appellee.

________________________________________________________________________
On appeal from the 217th District Court of Angelina County, Texas.

________________________________________________________________________



MEMORANDUM OPINION

Before Justices Yañez, Castillo, and Wittig (1)

Opinion by Justice Wittig

 



 Mkeyisha Detrick Phipps, individually and as next friend of Darius Phipps, a minor, appeal an adverse summary judgment. 
 The summary proceeding was based on the City of Lufkin's affirmative defense of official immunity and "no duty." We
reverse and remand.

 I

 The City of Lufkin was sued in district court in Angelina County. A City rescue truck, on an emergency run, proceeded
into a controlled intersection against a red light. The vehicle had on its siren and lights, but lagged behind other emergency
vehicles by some distance. Ahead, three emergency vehicles -- a police car, a constable car and an ambulance -- safely
crossed the intersection on a green light. Local traffic waited at least two full red light cycles, before the Phipps' vehicle
entered the intersection on a green light. The City rescue driver did not see appellants' vehicle until it was too late. Rather,
it was the passenger in the rescue truck who first saw the Phipps' vehicle and warned the City driver, Charlie Grumbles. 
Grumbles was warned that the Phipps' vehicle was entering the intersection from the right. Instead of steering the truck to
avoid appellants by swerving behind Phipps to the right, Grumbles swerved to the left, directly into the path of appellants'
vehicle. By swerving to the left, the rescue truck veered over the center strip and into the on coming traffic lane. Based on
the skid marks, the rescue truck did not apply its brakes until the moment it entered the intersection. The left front bumper
of the rescue truck severely impacted the driver's door of appellants' vehicle. The City truck then dragged the Phipps'
vehicle some 40 feet after impact and shoved it into a stopped vehicle heading the opposite direction of the City truck. The
City truck left 72 feet of dual-wheel skids. Appellants sustained serious injuries, incurring over $290,000 in medical
expenses.

 The City would have us infer that Grumbles was traveling in a convoy. However, contrary proof, which we must accept as
true, shows Grumbles was not in radio contract with the other three vehicles and there was a time lapse of between one and
one-and-a-half minutes between the first three emergency vehicles and Grumbles. In an affidavit, Grumbles swore he "was
exercising good faith" in operating the vehicle and he further opined that any reasonable prudent officer could have
believed the need to go through the red light outweighed the risk of harm to the public.

The City also invoked the jurisdiction of the trial court by filing a counterclaim asserting appellants caused the accident and
damaged the City truck when they entered the intersection on a green light. (2)

II

 The City's summary judgment motion was argued variously under both the traditional and no-evidence standards. A
"traditional" rule summary judgment is proper only when the movant establishes there is no genuine issue of material fact
and it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); Lear Siegler, Inc. v. Perez, 819 S.W.2d 470, 471
(Tex. 1991). A trial court properly grants summary judgment in favor of a defendant if that party conclusively establishes
all elements of an affirmative defense, or conclusively negates at least one element of the plaintiff's claim. American
Tobacco Co., Inc. v. Grinnell, 951 S.W.2d 420, 425 (Tex. 1997). Appellee was required to establish that no genuine issue
of material fact existed and that judgment should be granted as a matter of law. Tex. R. Civ. P. 166a(c); Nixon v. Mr. Prop.
Mgmt. Co., 690 S.W.2d 546, 548 (Tex. 1985). 

 In a "no-evidence" summary judgment, a party is entitled to summary judgment if there is no evidence of one or more
essential elements of a claim or defense on which an adverse party (3) would have the burden of proof at trial. Tex. R. Civ.
P. 166a(i). In reviewing a no-evidence summary judgment, we apply the same legal sufficiency standard as a directed
verdict. Lampasas v. Spring Ctr., Inc., 988 S.W.2d 428, 432 (Tex. App.-Houston [14th Dist.] 1999, no pet.); Chapman v.
King Ranch, Inc., 41 S.W.3d 693, 698 (Tex. App.-Corpus Christi 2001, pet. filed). A no-evidence summary judgment is
proper if the respondent fails to bring forth more than a scintilla of probative evidence in support of one or more essential
elements of a claim. Tex. R. Civ. P. 166a(i). Where a summary judgment motion does not unambiguously state that it is
filed under rule 166a(i) and does not strictly comply with the requirements of that rule, it will be construed as a traditional
summary judgment motion. Michael v. Dyke, 41 S.W.3d 746, 750 (Tex. App.-Corpus Christi 2001, pet. denied).

 We review the trial court's granting of a motion for summary judgment de novo.Natividad v. Alexsis, Inc., 875 S.W.2d 695,
699 (Tex. 1994); Texas Commerce Bank Rio Grande Valley v. Correa, 28 S.W.3d 723, 726 (Tex. App.-Corpus Christi
2000, pet. denied). When reviewing a summary judgment under either standard, we view the evidence in the light most
favorable to the non-movant, disregarding all contrary evidence and inferences. Randall's Food Mkts., Inc. v. Johnson, 891
S.W.2d 640, 644 (Tex. 1995);Flameout Design & Fabrication, Inc. v. Pennzoil Caspian Corp., 994 S.W.2d 830, 834 (Tex.
App.-Houston [1st Dist.] 1999, no pet.). 

III

 Appellants first argue that the City was not entitled to summary judgment on its defense of official immunity. Official
immunity is an affirmative defense. City of Lancaster v. Chambers, 883 S.W.2d 650, 653 (Tex. 1994)(citing Perry v.
Texas A & I Univ., 737 S.W.2d 106, 110 (Tex. App.-Corpus Christi 1987, writ ref'd n.r.e.)). Thus, the burden is on the
appellee to establish all elements of the defense. Id. Government officials are entitled to official immunity from suit
arising from the performance of their (1) discretionary duties in (2) good faith as long as they are (3) acting within the
scope of their authority. Id. Appellants do not challenge the fact Grumbles acted within the scope of his authority; they even
allege the agency relationship in order to assert the City liability under respondeat superior. Accordingly, the argument
centers on the elements of (1) discretionary duties and (2) good faith.

 The City argued below and before us that all decisions made by the driver of an emergency vehicle when responding to an
emergency call, are discretionary as a matter of law. We disagree. Both parties cite Chambers as controlling authority. 
The City relies on the Chambers holding that the decision of a police officer to pursue a particular suspect will
fundamentally involve the officer's discretion. Id. at 655. Unlike Chambers, however, the City's proof does not establish in
the first instance, that Grumbles had to "elect whether to undertake pursuit." Id. Nor was Grumbles faced with an police
officer's decision to proceed at the same high speed of the pursued vehicle and decide "which route should be followed, at
what speed, should back-up be called for, and how closely should the fleeing vehicle be pursued." Id. Rather, Grumbles
responded to a police dispatch, to a specific school, and in fact admitted he followed, without questioning, the same route
taken by the three other emergency vehicles.

 Several courts of appeals have discussed the issue of discretionary function of paramedics on the return leg of their
emergency calls, when they are attending to an injured patients. See Rivas v. City of Houston, 17 S.W.3d 23, 29 (Tex.
App.-Houston [14th Dist.] 2000, pet. denied)(and cases cited therein). In Rivas, the paramedic testified that the patient's
condition and demeanor were worsening on the way to the hospital, and there was an increasing risk to both the patient and
to the medic's partner. Id. Accordingly, the paramedics had to decide whether to upgrade the call to a "Code II" emergency. 
Id. However, other courts have held that a government employee's operation of a motor vehicle in a "non-emergency
situation" does not require deliberation, decision, or judgment, and is therefore ministerial in nature. Id. (citing City of
Wichita Falls v. Norman, 963 S.W.2d 211, 216 (Tex. App.-Fort Worth 1998, pet. dism'd w.o.j.); Burgess v. Jaramillo, 914
S.W.2d 246, 249 (Tex. App.-Fort Worth 1996, no pet.); Woods v. Moody, 933 S.W.2d 306, 308 (Tex. App.-Houston [14th
Dist.] 1996, no writ)). Appellants argue, "The only judgment left to the bus driver is traffic judgment, not governmental
judgment." Garza v. Salvatierra, 846 S.W.2d 17, 22-23 (Tex. App.-San Antonio 1992, writ dis'm., w.o.j.). Garza
informatively instructs that "'Discretionary acts' of state officials and employees require personal deliberation, decision, and
judgment, whereas ministerial acts require obedience to orders. " Id. Discretionary acts are those related to determining
what the policy of the governmental unit will be, but do not extend to the carrying out of the specifics of particular policies
or exercise of "professional" or "occupational" discretion. Id. Policy decisions are made by the governmental agencies or
units, which require governmental judgment. A decision as to whether a bus travels a given route on a certain day, and at a
specific time is discretionary and is not made by bus drivers. Id. Ministerial functions involve carrying-out the specifics of
a policy decision, such as the driving of a bus along a given route on a certain day, at a specific time, and in accordance
with the law, and the driving rules and regulations promulgated by the policy-decision makers. Id. "[T]he Court need not
decide whether a bus driver has discretion to make turns at any speed, whether he can change lanes or execute turns with
safety, whether he should overtake or pass other vehicles, or any of the kinds of decisions alleged by appellant...." Id. 
Here there is proof of "traffic judgment" but little or no evidence of deliberation, decision or judgment.

 The City weakly argues, with little or no proof, that, as a medical technician, Grumbles had to determine whether the call
was in fact an emergency or a more routine call. However, Grumbles's own affidavit does not support the contention. He
states, in his affidavit, he was "dispatched," or as we understand the term, he was sent off to a specific destination. His
affidavit and deposition testimony state he"recognized" the distinction between an emergency and routine call. Grumbles
does not mention any wilful choice or decision. The record does not support the City's contention that Grumbles had to
indulge any personal deliberations, determinations, or decisions other than traffic decisions. SeeRivas, 17 S.W.3d at 29. 
We cannot say that the mere fact an emergency vehicle is ministerially dispatched to a certain location, follows in line with
other vehicles, and performs only driving functions, establishes the necessary discretionary function. There is no
competent proof from which appellee establishes, as a matter of law, the type of discretionary decision making process that
would prove that the dispatched call of Grumbles to a knife fight was a discretionary act. Tex. R. Civ. P. 166a(c). 

IV

 In its good faith defense under official immunity, the City correctly argues the test is one of objective reasonableness. 
Citing Chambers, it argues an official or employee acts in good faith if a reasonably prudent official/employee "could have
believed that his or her acts were justified." Chambers, 883 S.W.2d at 656. The City also aptly citesUniversity of Houston
v. Clark, 38 S.W.3d 578 (Tex. 2000). Clark holds that once the movant has established good faith, "[t]he nonmovant must
show that no reasonable person in the officer's position could have thought that the facts justified the officer's acts." Id. at
581 (citing Chambers, 883 S.W.2d at 656). We agree this supreme court authority informs us of the interpretation given to
the "good faith" requirement for the application of official immunity. The City also argues from, Harris County v. Ochoa,
881 S.W.2d 884 (Tex. App.-Houston [14th Dist.] 1994, writ denied) (summary judgment may be based on uncontroverted
testimonial evidence of an interested witness "if the evidence is clear, positive and direct, otherwise credible and free from
contradiction and inconsistencies, and could have been readily controverted." Id. at 887 (citing Tex. R. Civ. P. 166a(c)). 
This is precisely where appellee's proof breaks down and does not establish good faith as a matter of law.

 In Ochoa, two deputies described specific facts, readily controvertible, directly spelling out the basis for their opinions of
good faith. Id. The first deputy swore: "I knew that he had driven in a way that was dangerous to the public, because he
barely missed the pedestrian on the sidewalk on Wilcrest, and because he fled from my vehicle. When I decided to pursue
Juan Carlos Guiterrez, I believed that the time of night, the minimal traffic, the commercial nature of the area in which
nearly every store was closed to business, and the large road with numerous lanes on which we were traveling all
diminished any risk from the chase itself, while Guiterrez posed a significant risk to the public." Id. at 887-88. The chase
was short and the deputies ran no red lights. Id. The other deputy added: "considering the road (8 lanes), weather (clear
and dry), the lighting (well lit), the traffic (light) and lack of pedestrian traffic, the danger posed to us, the suspects and the
public from a pursuit on Westheimer was far less than the danger posed by the suspect considering the manner in which the
suspect drove and the circumstances." Id. at 888. Notably, each deputy's affidavit also established the objective good faith
of the other deputy. Id. at 889.

 In marked contrast, Grumbles's lone affidavit avers he was responding to an emergency, the light changed from green to
red, he took his foot off the accelerator, noticed a car moved, his passenger warned him, and his own opinion "I was
exercising good faith." He further opined "any reasonable officer...could have believed that the actions taken, and the need
to proceed through the intersection against the red light outweighed the risk of harm...." The City's proof, consisting only
of Grumbles's affidavit, two pages of deposition testimony, and a police report, does not specifically address the risk
assessment requirements. (4) In order to prevail on the good faith element of official immunity, the government must show
both how a reasonable prudent officer/driver could have assessed both the need to which the response is made and the risks
of the course of action based upon the officer perceptions of the facts at the time of the event. Chambers, 883 S.W.2d at
656. However, conclusory statements by an expert (or party) are insufficient to support or defeat summary judgment.
Wadewitz v. Montgomery, 951 S.W.2d 464, 467 (Tex. 1997). Thus, an expert's conclusory statement that a reasonable
officer could or could not have taken some action will neither establish good faith at the summary judgment stage nor raise
a fact issue to defeat summary judgment. Id. Instead, expert testimony on good faith must address what a reasonable
officer could have believed under the circumstances. Id. (citing Chambers, 883 S.W.2d at 656-57). The proof must be
substantiated with reference to each aspect of the Chambers balancing test. Id. Grumbles's two pages of deposition
testimony does mention that he believed there was an altercation with a knife and some kids were hurt at the Alternative
School. And assuming, without deciding, this proof might have satisfied the need aspect of good faith, the conclusory
nature of the risk aspect is wholly deficient. (5)

 The risk aspect of good faith refers to the countervailing public safety concerns. Id. The City simply fails to address the
nature and severity of harm Grumbles's actions could cause, the possibility of injuries to bystanders or even the possibility
of an accident preventing Grumbles from reaching his destination. Id. The City offered no proof of the likelihood of any
harm and whether the risk of harm would be clear to a reasonably prudent driver. Id. Without taking into account both
sides of the Chambers good faith balancing test, Grumbles proffered no suitable basis for concluding that a reasonable
officer could or could not have believed that Grumbles' actions were justified. Accordingly, the City did not meet its
burden to establish that Grumbles acted in good faith. Id. at 467; Chambers, 883 S.W.2d at 656.V

 Finally, we address the City's argument of "no duty." First we note the "shotgun" approach of this portion of the City's
motion. The motion begins under the title "III No Evidence Motion for Summary Judgment." The City argued to the trial
court "To recover of a claim for negligence, the Plaintiff's must prove there was a duty owed, the duty was breached, the
breach was the approximate [sic] cause of the injuries, and the Plaintiffs suffered damages." At this point the City cites
McCall v. Marshall, 398 S.W.2d 106, (Tex. 1965). McCall is an insurance coverage case and simply reiterates that a tort
requires duty, breach, proximately causing damages. Id. at 108 (holding that facts of case fail as a matter of law to impose
a duty upon the petitioner to provide additional insurance coverage). The original motion for summary judgment obliquely
mentions negligence and recklessness. In their supplemental motion, the City reiterates their claim of "no duty," again
citing McCall.

 We have recently delineated the requirements of a no evidence motion for summary judgment. See Oasis Oil Corp. v.
Koch Refining Co. L.P., 60 S.W.3d 248, 252 (Tex. App.-Corpus Christi 2001, pet. denied). There, we noted: 

 1. the no-evidence motion can only be brought against "a claim or defense on which an adverse party would have the
burden of proof at trial," Tex. R. Civ. P. 166a(i);

 

 2. "the motion must state the elements as to which there is no evidence," Id.; 

 3. "the motion must be specific in challenging the evidentiary support for an element of a claim," . Tex. R. Civ. P. 166a cmt.;



 4. "paragraph (i) does not authorize conclusory motions or general no-evidence challenges to an opponent's case," Id.; 



 5. "its response need only point out evidence that raises a fact issue on the challenged elements," Id.; and



 6. "the respondent is not required to marshal its proof." Id. 



Oasis Oil Corp. 60 S.W.3d at 252.

 At the most the City has perhaps challenged the "duty" aspect of the Phipps' liability claims. This is easily disposed
because section 24(e) of article 6701d imposes liability for reckless operation of an emergency vehicle in an emergency
situation. Martin, 971 S.W.2d at 430. Thus, the question is not duty, but whether or not there is evidence of the required
degree of reckless operation. The City's motion for summary judgment does not state the element as to which there is no
evidence and does not specifically challenge the evidentiary support for the element. Tex. R. Civ. P. 166(a)(i). The City
further obscures their no evidence motion by pointing us to the testimony of Ms. Phipps. Under our holding in Michael, 41
S.W.2d at 750, the motion should therefore be construed as a traditional summary judgment motion, and as such also fails.

 On appeal, the parties narrow the issues and accept the premise that an emergency vehicle operator and the City are only
liable for "reckless" behavior. Even though this argument was not properly raised at the trial court, we will nevertheless
address the issue in the interest of judicial economy. See Tex. R. Civ. P. 33.1.

 To recover damages resulting from the emergency operation of an emergency vehicle, a plaintiff must show that the
operator has committed an act that the operator knew or should have known posed a high degree of risk of serious injury. 
City of Amarillo v. Martin, 971 S.W.2d 426, 430 (Tex. 1998) (citing Wal-Mart Stores, Inc. v. Alexander, 868 S.W.2d 322,
326 (Tex. 1993) (gross negligence finding (by jury) may be upheld on appeal only if there is some evidence that a.) the
defendant's conduct created an extreme risk of harm, and b.) the defendant was aware of the extreme risk). More recently,
the supreme court noted: to recover damages resulting from the emergency operation of an emergency vehicle, a plaintiff
must show that the operator has committed an act that the operator knew or should have known posed a high degree of risk
of serious injury--in other words, that the operator has acted recklessly. Kolster v. City of El Paso, 972 S.W.2d 58, 59
(Tex. 1998). So we inquire whether there is some evidence that Grumbles knew or should have known his conduct posed a
high degree of risk of serious injury. In other words, is there some evidence he acted recklessly?

 The City argues the rescue truck was not the only emergency vehicle on its way to the school-Grumbles was in a convoy of
vehicles with lights flashing and siren blaring. However, contrary proof shows a significant gap between Grumbles and the
vehicles to his front, who after all had a green light. The police report establishes the accident occurred during school and
rush hour at 8:03 a.m. on a Tuesday morning. The posted speed limit was 35 miles per hour. Local traffic had already
waited through two green lights, respecting the emergency traffic. With a coefficient of friction of .69, the rescue truck put
down 72 feet of dual-wheel skid marks. Both streets were four lanes wide and the Phipps vehicle was more than 52 feet
into the intersection on a green light when it was struck at the driver door by the City vehicle. The City vehicle was in its
left lane but did not swerve to its right in order to miss the Phipps vehicle. Rather, it struck Phipps after Phipps crossed the
center stripe of the cross street. From the police diagram, it is apparent had the City vehicle not struck Phipps' vehicle, it
would have struck an oncoming vehicle head-on. In fact, the City vehicle shoved the Phipps' vehicle into the oncoming,
head-on vehicle driven by Naomi Graham. (6)

 The deposition of Phipps showed she entered the intersection on a green light and it is apparent her vision, as well as that
of Grumbles, was partially blocked by a van. (7) Grumbles testified he was traveling between 40 and 45 miles per hour in the
35 mile-per-hour zone on his way to the school.

 Viewed in the light most favorable to appellants, Grumbles was driving in excess of the speed limit, during rush and
school hours. He entered the intersection against a red light where there was at least moderate traffic. Traveling well
behind the three other emergency vehicles, Grumbles belatedly approached the intersection where local traffic had waited
at least two green light cycles. Grumbles failed to observe traffic and had to be warned by his co-worker of a vehicle to his
immediate front. Grumbles eventually slammed on his brakes as he entered the intersection. He swerved to his left,
crossed the center stripe, and veered into oncoming traffic lanes. He struck the Phipps' vehicle beyond his center strip and
after Phipps had traveled over 52 feet into the intersection in front of Grumbles. He caused serious damage to the
vehicles as well as injuries. We hold that there exists some evidence of recklessness that "rises to a level that would enable
reasonable and fair-minded people to differ in their conclusions." Merrell Dow Pharms., Inc. v. Havner, 953 S.W.2d 706,
711 (Tex. 1997).

 The summary judgment is reversed and remanded.



DON WITTIG

Assigned Retired Justice




Opinion delivered and filed this the

30th day of January, 2003.



1. Retired Justice Don Wittig assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to Tex.
Gov't Code Ann. § 74.003 (Vernon 1998).

2. Appellees correctly point out that the summary judgment was not final so long as their cross-action was pending. The
trial court then appropriately granted a motion to sever appellants' claims from the City's counter-claim. We address only
appellants' claims here, that were the subject of the City's motions for summary judgment.

3. At one point in its brief the City erroneously states that the summary judgment must be affirmed if appellant fails to
negate either ground for summary judgment. Later, the City correctly observes it has the burden on proof on its affirmative
defense of official immunity. See Tex. R. Civ. P. 166a(c) and (i).

4. Ochoa demonstrates the risk element by observing traffic was light, the officers ran no red lights, the streets were wide
and the need to stop a person jumping curbs, disregarding police and endangering others. Grumbles' affidavit does not
address the risks of surrounding traffic, traffic signals, the need to swerve, weather, traffic conditions or other risks. It is
also apparent school was in session, but the aspect of possibly speeding through school zones is also ignored. According to
the police report, the accident occurred at 8:03 a.m., February 13, 1996. The risk aspect must address the degree, likelihood
and obviousness of the risks created. See Wadewitz, 951 S.W.2d at 467. 

5. Even the need aspect proof does not address why a 25 foot rescue was needed in addition to the ambulance and two
other emergency vehicles.

6. The Graham vehicle was stopped for the red light.

7. Phipps apparently was first behind the van for some time then pulled into the right hand lane and around the van. The
intersection was four lanes in each direction.