**Marisela RAMOS, Neyr Ramos, Maria Suarez Garcia, and Saustiano Garcia, Appellants,**

v.

**TEXAS DEPARTMENT OF PUBLIC SAFETY and Officer Willie Kent, Appellees.**

No. 01–98–01431–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Nov. 30, 2000.

Joseph A. Fischer, III, Jeffrey D. Meyer, Houston, for Appellant.

John P. Giberson, John Cornyn, Austin, for Appellee.

Panel consists of Justices MIRABAL, NUCHIA, and EVANS.*

## OPINION

SAM NUCHIA, Justice.

In this wrongful death case, plaintiffs and intervenors (collectively "appellants") bring an appeal from an order granting a plea to the jurisdiction in favor of the Texas Department of Public Safety (DPS) and from a summary judgment rendered in favor of Officer Willie Kent. We affirm.

### I. Case Background

On May 15, 1996, Silvia Irachete took Aurora Cano to the DPS's West Orem Street office in Houston so that Cano could take a road test to obtain a driver's license. Accompanying Irachete and Cano to the DPS building were six children-five-year-old David Ramos and Melissa Garcia (the decedents), plus four other children.

Officer Kent administered Cano's road test. While Cano took the test in Irachete's car, Irachete and the six children waited outside, in front of the DPS building. Cano drove the car; Officer Kent rode in the front passenger seat. As Cano completed the road test, she entered the DPS parking lot and pulled into a space in front of the DPS building to park the car. As she adjusted the car's position, she stepped on the accelerator instead of the

* The Honorable Frank G. Evans, retired Chief Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

brake, causing the car to lurch forward and kill David and Melissa.

David Ramos's parents, Marisela Ramos and Neyr Ramos, filed this suit against DPS and Officer Kent under the Texas Tort Claims Act[1] (the Act). Melissa Garcia's parents, Maria Suarez Garcia and Salustiano Garcia, later intervened in the lawsuit. The Ramos and Garcia families essentially complain that David's and Melissa's deaths were caused by: (1) Officer Kent's negligent operation and use of Irachete's car; (2) the dangerous condition of the DPS office; and (3) DPS's failure to warn or protect David and Melissa from the unsafe conditions at the DPS office.

Defendants, both individually and jointly, repeatedly sought to dismiss all claims by filing a series of motions, some of which overlapped. Ultimately, the trial court dismissed all claims against Officer Kent by granting his motion for summary judgment, in which he asserted qualified immunity, as well as dismissing all claims against DPS pursuant to its amended plea to the jurisdiction, in which it asserted sovereign immunity from suit. In four main issues, appellants claim the trial court erred in dismissing all claims.

## II. Claims Against Officer Kent and DPS

In issue two, appellants complain the trial court erred in granting Officer Kent's motion for summary judgment in which Officer Kent asserted the claims against him must be dismissed under the affirmative defense of official immunity. Additionally, appellants assert that because Kent is not entitled to official immunity, DPS is not entitled to immunity vicariously, and therefore its plea to jurisdiction should not have been granted on that basis. DPS had rightly asserted as a ground in its plea to jurisdiction that, if Officer Kent established the defense of official immunity, then no liability could attach to DPS, Kent's employer, with regard to the claim involving the operation of the motor

vehicle. *See DeWitt v. Harris County*, 904 S.W.2d 650 (Tex.1995).

### A. Overview of Official Immunity

The official immunity doctrine protects government employees from civil liability for conduct that would otherwise be actionable. *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex.1994); *see also* Tex.Civ.Prac. & Rem.Code Ann. § 101.026 (Vernon 1997). Official immunity is based on sound public policy that encourages public officers to perform their discretionary duties without fear of personal liability for negligent or improper performance. *Chapman v. Gonzales*, 824 S.W.2d 685, 687 (Tex.App.—Houston [14th Dist.] 1992, writ denied). Official immunity protects the government officer from individual liability for the performance of his duties if three requirements are met: (1) the duties must have been discretionary duties, rather than ministerial duties; (2) the employee must have acted in good faith when he exercised his duties; and (3) the employee must have acted within the course and scope of his authority. *Chambers*, 883 S.W.2d at 653; *Korndorffer v. Baker*, 976 S.W.2d 696, 701 (Tex.App.—Houston [1st Dist.] 1997, pet. dism'd w.o.j.).

Here, the parties disagree about the first two elements: the nature of the duties and whether Officer Kent acted in good faith. It is undisputed that Officer Kent was acting within the course and scope of his employment, the third element.

### B. Scope and Standard of Review

Summary judgment under rule 166a(c) of the Texas Rules of Civil Procedure is proper only when the movant establishes that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex.1995); *Lawson v. B Four*

---

1. Tex.Civ.Prac. & Rem.Code Ann. §§ 101.001– .109 (Vernon 1997 & Supp.2000).

*Corp.*, 888 S.W.2d 31, 34 (Tex.App.—Houston [1st Dist.] 1994, writ denied). In reviewing the rendition of summary judgment, we assume all evidence favorable to the nonmovant is true. *Johnson,* 891 S.W.2d at 644; *Lawson,* 888 S.W.2d at 33. We indulge every reasonable inference and resolve any reasonable doubt in favor of the nonmovant. *Science Spectrum, Inc. v. Martinez,* 941 S.W.2d 910, 911 (Tex.1997). A defendant may obtain summary judgment by conclusively establishing all elements of an affirmative defense, such as immunity, as a matter of law. *Id.; Jones v. Legal Copy, Inc.,* 846 S.W.2d 922, 924 (Tex.App.—Houston [1st Dist.] 1993, no writ).

### C. Discretionary v. Ministerial

■ Appellants assert Kent failed to establish the first element of official immunity: that his duties were discretionary. Appellants argue Kent's duties at the time of the accident were ministerial.

■ If an action involves personal deliberation, decision, and judgment, it is discretionary; an action that requires obedience to orders or the performance of a duty to which the employee has no choice is ministerial. *Chambers,* 883 S.W.2d at 654. The distinction between these two categories is often one of degree because any official act that is ministerial will still require the employee to use some discretion in its performance. *Id.* In determining whether an act is discretionary, the issue is whether an employee was performing a discretionary function, not whether he had the discretion to do an allegedly wrongful act while discharging that function or whether the employee's job description included discretionary duties. *Id.* at 653.

Appellants concede that Kent was performing discretionary duties when he was conducting the driving test on the roadways, *i.e.,* when he was directing Ms. Cano during the road test. However, appellants argue that once they had returned to the DPS office parking lot, all that remained

to be done was the parking of the car, which did not involve discretionary actions by Kent. We disagree.

The summary judgment affidavits of Officer Kent and Lt. James Blunt address the extent of a testing officer's discretion. Officer Kent's affidavit states in relevant part:

> I am employed as a Trooper I with the Texas Department of Public Safety (DPS) in the Driver's License Division, and have been employed as such for the past three and a half years. . . .

> On May 15, 1996, I was conducting driver's license road tests at the DPS driver's license office located at West Orem Street. This is one of my core duties as a Trooper in the Driver's License Division, and I spend approximately three days a week conducting road tests. . . . By May 15, 1996 I had conducted at least two hundred (200) Class C road tests. Never at any time during one of those tests was the operator of the vehicle involved in any accident. . . . I know of no pedestrian-motorist accidents in the parking area of the West Orem office.

> . . . .

> If a Trooper or Examiner judges a person to be unable to complete the road test he can terminate the test at any time. Likewise, if he decides the driver is a danger to the public the Trooper or Examiner can require the driver to pull over and take control of the vehicle, driving back to the DPS office. I departed from the standard road test route and asked Ms. Cano to pull into a strip mall area across the street from the West Orem office so that I could further judge her ability to control the vehicle through a turn. Ms. Cano did not display any signs of excessive nervousness during the road test. Although she was not a highly skilled driver and was borderline to pass the road test, I made the judgment that Ms. Cano was not a threat to the public and was capable of

completing the road test. I then asked Ms. Cano to return to the parking lot at the West Orem office. I asked her to park, indicating she could park anywhere in the lot. At that point I did not see any children. Ms. Cano parked the car in a space facing the West Orem office. Although she did not initially pull up as far as she could have, I considered her position in the space to be adequate.

I asked Ms. Cano to put the car in park which she did. I then asked her to turn off the ignition key. Her hand moved toward the ignition key, and I believed she was going to turn the car off. I looked down to complete the examination and total up the points lost by Ms. Cano. The next thing I knew the car lurched forward, jumped the parking space divider and the curb and struck the side of the building. I had no time to react. I literally looked down, and the next thing I knew we were into the wall. . . .

At no time did I have any indication that Ms. Cano was about to lurch the car forward into the wall of the building. At this time I did not see the children prior to the impact. I wish there was something I could have done to avoid this accident. At all times relevant to this incident, my decisions and actions were motivated solely by my duty as a DPS Trooper.

The affidavit of Lt. Blunt states in relevant part:

I am employed as a Lieutenant with the Texas Department of Public Safety (DPS) in the Driver's License Division. I have been employed with DPS for the past 23 years. . . . In addition to my initial training in driver's license law given at DPS' Training Academy, I have periodically taken training courses in conducting road tests, driver's license issuance procedures and driver's license safety procedures. I have also served as an instructor in road test courses and driver's license law at DPS' Training Academy. As a Trooper, Sergeant, and Lieutenant I have conducted more than 5,000 road tests for persons seeking to get their driver's license. I also frequently ride with Troopers and Examiners who are conducting road tests to evaluate their skills.

I am familiar with the laws of the State of Texas and DPS policies, procedures and training in the area of conducting road tests for persons seeking driver's licenses. I am familiar with the duties Trooper Kent had at the time of the incident on May 15, 1996, wherein two children were killed by a person taking a road test at the DPS driver's license office located at West Orem Street in Houston. I at one time held those same responsibilities. Parts of my current duties include training troopers who have those responsibilities. I have reviewed the DPS report relating to this incident. I have reviewed all statements made by Aurora Cano and Silvia Irachete concerning this incident. I have spoken to Trooper Kent about it and read both his affidavit and deposition. I have spoken to Trooper Marcial Gonzalez, who conducted the DPS' Investigation of this incident, Sergeant Rhyne, the supervisor of the West Orem office at the time, and Lieutenant Gutierrez, the Lieutenant in charge of the district at the time of the incident.

Trooper Kent's job duties included and still include conducting road tests. This is precisely what he was doing on May 15, 1996 when he conducted Ms. Cano's road test. . . . A Trooper or Examiner must judge whether an examinee is capable of completing a road test. He has the discretion to order an examinee to pull over and stop the road test if he feels that person is a threat to the general public. A Trooper or Examiner is the sole judge in grading the maneuvers in an examinee's road test and in determining whether an individual receives a passing score overall. Within the DPS' broad guidelines he has the authority to

do whatever he judges necessary to give him adequate information to make that determination. There is no part of the road test which is not subject to the Trooper or Examiner's personal deliberation, decision and judgment.

In my opinion Trooper Kent followed all applicable laws of the State of Texas and regulations and guidelines of the DPS when he administered Aurora Cano's road test. He tested the car she brought for the road test for relevant safety features. At no time was there any indication that Ms. Cano was abnormally nervous or that she posed a danger to the public in the way she was driving the automobile. At no time did it become necessary for Trooper Kent to take control of the vehicle because of deficient driving by Ms. Cano. She was able to complete the road test without incident up to the point at which she parked the vehicle. There is no designated parking area at the West Orem office for persons taking road tests. Ms. Cano was free to park in any available space. After she stopped, Trooper Kent requested that she place the vehicle in park and to turn the engine off. At that point the driving portion of the road test was over. All that remained was for Trooper Kent to tally up the points lost by Ms. Cano and explain to her the results. Ms. Cano's decision to again move the car, which resulted in the collision, was outside any instructions given by Trooper Kent and was outside the scope of the driving portion of the road test.... Regarding all of Trooper Kent's actions in conducting Ms. Cano's road test and afterward, any reasonably prudent DPS Trooper, under the same or similar circumstances, could have made the same decisions and taken the same actions as Trooper Kent. Based on my years of experience in this field I would have done the same myself. I cannot think of one circumstance where I would have chosen to do something differently in this matter.

Officer Kent's summary judgment evidence establishes that the discretion of an officer administering a driving test has two facets. One is the discretion to request that the driver perform various driving actions so that the officer can evaluate the driver's ability to operate the vehicle. The other is the discretion to continually evaluate whether the driver can safely operate the vehicle during the test. The evidence also establishes that both facets of a testing officer's discretion continue to exist until the driver is no longer operating the vehicle. That is when the car is safely parked or when the officer stops the test and takes over driving the vehicle. As in *Chapman,* in which the official administering a pre-employment test was engaging in discretionary acts, Officer Kent in the present case was engaging in discretionary acts until the driving test was concluded. *See Chapman,* 824 S.W.2d at 686–88.

### D. Good Faith

This Court must measure good faith in official immunity cases against a standard of objective reasonableness without regard to the official's subjective state of mind. *Chambers,* 883 S.W.2d at 656; *Cobb v. Texas Dep't of Criminal Justice,* 965 S.W.2d 59, 64 (Tex.App.—Houston [1st Dist.] 1998, no writ). This requires a two-part test balancing competing interests: the "need" aspect concerns the seriousness of the situation, as well as the alternatives available to the official; the "risk" aspect refers to "the nature and severity of harm that the officer's actions could cause, the likelihood that any harm would occur, and whether any risk of harm would be clear to a reasonably prudent officer." *Wadewitz v. Montgomery,* 951 S.W.2d 464, 467 (Tex. 1997); *Cobb,* 965 S.W.2d at 64. To be entitled to summary judgment, an official must prove that a reasonably prudent official might have believed that the action taken was appropriate. *Chambers,* 883 S.W.2d at 656–57; *Gallia v. Schreiber,* 907 S.W.2d 864, 869 (Tex.App.—Houston [1st Dist.] 1995, no writ). The official does not need to prove that it would have been

unreasonable to take different action, nor must the officer prove that all reasonably prudent officers would have acted as he did. *Chambers,* 883 S.W.2d at 657; *Gallia,* 907 S.W.2d at 869.

The summary judgment affidavits of Officer Kent and Lt. Blunt address both the "need" and "risk" aspects of the balancing test. Officer Kent's affidavit states in relevant part:

> By May 15, 1996 I had conducted at least two hundred (200) Class C road tests. Never at any time during one of those tests was the operator of the vehicle involved in any accident. . . . I know of no pedestrian-motorist accidents in the parking area of the West Orem office.
>
> . . . .
>
> . . . Ms. Cano did not display any signs of excessive nervousness during the road test. Although she was not a highly skilled driver and was borderline to pass the road test, I made the judgment that Ms. Cano was not a threat to the public and was capable of completing the road test. I then asked Ms. Cano to return to the parking lot at the West Orem office. I asked her to park, indicating she could park anywhere in the lot. At that point I did not see any children. Ms. Cano parked the car in a space facing the West Orem office. Although she did not initially pull up as far as she could have, I considered her position in the space to be adequate.
>
> At no time did I have any indication that Ms. Cano was about to lurch the car forward into the wall of the building. At this time I did not see the children prior to the impact. . . . At all times relevant to this incident, my decisions and actions were motivated solely by my duty as a DPS Trooper.

Regarding the elements of "need" and "risk," the affidavit of Lt. Blunt states in relevant part:

> In my opinion Trooper Kent followed all applicable laws of the State of Texas and regulations and guidelines of the DPS when he administered Aurora Cano's road test. . . . At no time was there any indication that Ms. Cano was abnormally nervous or that she posed a danger to the public in the way she was driving the automobile. At no time did it become necessary for Trooper Kent to take control of the vehicle because of deficient driving by Ms. Cano. She was able to complete the road test without incident up to the point at which she parked the vehicle. . . . Regarding all of Trooper Kent's actions in conducting Ms. Cano's road test and afterward, any reasonably prudent DPS Trooper, under the same or similar circumstances, could have made the same decisions and taken the same actions as Trooper Kent. Based on my years of experience in this field I would have done the same myself. I cannot think of one circumstance where I would have chosen to do something differently in this matter.

Thus, the "need" in this case, as shown by the affidavits of Officer Kent and Lt. Blunt, was simply to return to the parking lot of the DPS facility and park the car. The activity was routine, and there was nothing to indicate to Officer Kent that an unusual situation was presented. Ms. Cano had been driving on public roads in the process of taking the road test, and there is no evidence showing that Officer Kent had any reason to consider any alternative action such as assuming control of the vehicle and parking it on the lot.

Furthermore, there is no showing that Officer Kent had a reason to believe that the "risk" factor was high. He had conducted at least 200 road tests without the operator of the vehicle becoming involved in an accident. He was not aware of any previous pedestrian-motorist accidents on the parking lot of the DPS facility. He said Ms. Cano did not show any signs of excessive nervousness. At the time he instructed Ms. Cano to park the vehicle, he did not see any children in the vicinity. Finally, Lt. Blunt's affidavit is some evidence that

any reasonably prudent DPS officer in the same or similar circumstances could have made the same decisions as Officer Kent.

■ Officer Kent's summary judgment evidence was sufficient to prove that "a reasonably prudent officer might have believed" that the actions taken by Kent were appropriate. *See Chambers,* 883 S.W.2d at 656–57. To controvert Kent's summary judgment proof on good faith, appellants had the burden to show that "**no** reasonable person" in Kent's position could have thought the facts were such that they justified Kent's acts. *See id.* at 657. Appellants filed no such evidence.[2]

The trial court properly granted Officer Kent's motion for summary judgment, and therefore DPS's plea to the jurisdiction was also properly granted with regard to the claim involving the operation of the motor vehicle. Accordingly, we overrule appellants' issue two.

Because issues one and four attack alternative grounds for relief in DPS's plea to the jurisdiction with regard to the claim involving operation of the motor vehicle, it is not necessary for us to address those issues, and we decline to do so.

## IV. Premises Liability Claim Against DPS

In issue three, appellants assert the trial court erred in granting DPS's plea to the jurisdiction based on DPS's claim that the premises defect provision in the Texas Tort Claims Act does not act to waive DPS's sovereign immunity in this case.[3]

■ When we review the propriety of a trial court's ruling on a plea to the jurisdiction, our task is to examine the pleadings, to take as true the facts plead-ed, and to determine whether those facts support jurisdiction in the trial court. *Texas Ass'n of Bus. v. Texas Air Control Bd.,* 852 S.W.2d 440, 446 (Tex.1993). In their petition, plaintiffs alleged the following with regard to alleged premises defects:

> The DPS office failed to have any warnings posted concerning the dangers presented by the numerous inexperienced, dangerous, and unsafe drivers present in the area. The DPS office also fails to have a specifically designated safe waiting area, fails to separate the driving test area from the public, and fails to provide any warnings to visitors concerning, or to otherwise protect visitors from, the numerous inexperienced and potentially dangerous drivers. Further, the parking lot has no designated area to separate the road test participants, not even the bad ones, from the public. Left with no place to go, the children had to wait in a danger zone-a danger zone with no warnings and no designated safe waiting area and in which Officer Kent and the DPS specially instructed them to wait.
>
> . . . .
>
> 16. Moreover, the area in which David and the Irachete party were instructed to wait and did wait for Ms. Cano represents a dangerous condition that presents an unreasonable risk of harm to children and other members of the public ... and constitutes and contains premises defects as that term is known at law. Moreover, the entire DPS office and parking lot itself also represents a dangerous condition that presents an unreasonable risk of harm to children and other members of the public ...

---

2. Appellants claim they should have been allowed to depose Lt. Blunt before the summary judgment. However, the trial court acted within the exercise of its discretion in denying appellants' motion for continuance, and the appellants have not shown that there was an abuse of that discretion. Appellants presented no expert or other testimony that "**no** reasonable officer" could have thought the facts were such that they justified Kent's acts.

3. The Act waives immunity for injury and death caused by a condition or use of real property or tangible personal property. Tex. Civ.Prac. & Rem Code Ann. § 101.021 (Vernon 1997).

and constitutes and contains premises defects as that term is known at law. Because of past accidents and their experience with unlicensed drivers, the DPS knew and/or should have known that these drivers, including Ms. Cano, could and do lose control and run into things, including the building, which situation creates an unreasonably dangerous condition(s) of and on the premises. 17. Dangerous and unsafe drivers are present throughout the premises as such drivers are not in anyway separated from the public. The area in which David and the Irachete party were instructed to wait and in which they did wait for Ms. Cano was, and remains to this day, unreasonably dangerous and unsafe, along with the entire premises. These premises fail to have a designated waiting area, fail to separate the driving test area from the public, and fail to provide any warnings to visitors concerning, or to otherwise protect visitors from, the numerous inexperienced and potentially dangerous drivers such as Ms. Cano. All of this is despite the DPS's publicly acknowledged awareness that there have been previous instances of drivers crashing into the walls of DPS offices during driving tests being administered by DPS Officers. The DPS exercised exclusive control over the premises and facilities, but yet the DPS failed both to warn David Ramos and to make the condition and area reasonably safe, which failures, along with the dangerous and unsafe condition of the DPS office, caused or contributed to David's death. Moreover, these failures continue to date, in gross disregard for the safety of the public and young, innocent children like David.

Similarly, Intervenors alleged:

Intervenors further state that the proximity of the parking space to the area the children occupied, constitutes a condition of real property that proximately caused said accident and resulting damages of Intervenors. Providing a parking space to be used by unskilled drivers in an area known to be used by young children and other pedestrians without bumper stops or other barriers of sufficient size and strength to prevent movement of vehicles into said area, constitutes a dangerous condition created through the negligence of Defendant. Defendants' failure to have a testing area on their property away from the area occupied by Intervenors constitutes negligence of Defendants that said tragedy should have been foreseen. Intervenors further state that said dangerous condition of real property was known to Defendants, but was not known to Intervenors.

In its plea to the jurisdiction, DPS relied in part on section 101.056 of the Act, which provides that the waiver of sovereign immunity under the Act does not apply to a claim based on:

(1) the failure of a governmental unit to perform an act that the unit is not required by law to perform; or

(2) a governmental unit's decision not to perform an act or on its failure to make a decision on the performance or nonperformance of an act if the law leaves the performance or nonperformance of the act to the discretion of the governmental unit.

TEX.CIV.PRAC. & REM.CODE ANN. § 101.056 (Vernon 1997 ). It is the position of DPS that appellants' premises liability allegations complain about "design" decisions that are discretionary and therefore are immune from liability. Appellants respond that they are complaining about "operational" rather than "discretionary design" decisions, and therefore section 101.056 does not apply to the premises liability claims.

■ In their pleadings appellants specifically complain about:

(1) DPS's failure to properly provide a safe waiting area around the parking lot;

(2) DPS's failure to segregate dangerous and unsafe drivers from the public

by providing them separate testing and parking areas away from the general public;

(3) DPS's failure to at least have bumper stops or other barriers of sufficient size and strength in the parking spaces to prevent movement of vehicles into areas known to be used by children and other pedestrians; and

(4) DPS's failure to post warning signs concerning the dangers presented by the numerous inexperienced, dangerous, and unsafe drivers present in the area.

Appellants' allegations are complaints that the design of the parking area itself is defective, not that the condition of the parking area, as constructed in accordance with the existing designs, was defective; *i.e.*, there is no complaint that the parking surface or current bumpers are themselves defective, rather the complaint is that different or additional items should have been provided.

 There is a distinction between the negligent "formulation" of policy, for which sovereign immunity is preserved, and negligent "implementation" of policy, for which immunity is waived. *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 754 (Tex.1995). Thus, if the negligence causing an injury lies in the formulating of policy, *i.e.*, the determination of the "method" of providing protection, the government remains immune. *Id.; State v. Terrell*, 588 S.W.2d 784, 788 (Tex.1979). If, however, an officer or employee acts negligently in carrying out the policy, the Act waives sovereign immunity from suit. *See Terrell*, 588 S.W.2d at 788.

Texas courts have repeatedly held that "design decisions" are discretionary, and therefore immunity is not waived under the Act. *See Cortez v. Weatherford Indep. Sch. Dist.*, 925 S.W.2d 144, 149–50 (Tex. App.—Fort Worth 1996, no writ) (design decision to not equip school bus with stop arm was exercise of discretionary powers and sovereign immunity not waived); *Johnson v. Texas Dep't of Transp.*, 905 S.W.2d 394, 397–98 (Tex.App.—Austin 1995, no writ) (stop sign placement was

design decision shielded by sovereign immunity); *Maxwell v. Texas Dep't of Transp.*, 880 S.W.2d 461, 463 (Tex.App.—Austin 1994, writ denied) (design of roads and bridges, including installation of safety features such as guard rails and barricades, not subject of Act's waiver of sovereign immunity); *Mitchell v. City of Dallas*, 855 S.W.2d 741, 745 (Tex.App.—Dallas 1993), *aff'd* 870 S.W.2d 21 (Tex.1994) (design decisions made by city are discretionary and therefore immune); *Shives v. State*, 743 S.W.2d 714, 716 (Tex.App.—El Paso 1987, writ denied) (decisions not to place a traffic light at intersection and not to reduce speed limit were shielded by sovereign immunity). Similarly, other types of policy-formulating decisions are shielded by sovereign immunity. *See Thomas v. Lamar Univ.—Beaumont*, 830 S.W.2d 217, 219 (Tex.App.—Beaumont 1992, no writ) (decision to make running track available to public and decision not to supervise tracks' use by public were policy decisions for which sovereign immunity was not waived); *Trevathan v. State*, 740 S.W.2d 500, 502 (Tex.App.—Houston [1st Dist.] 1987, writ denied) (failure to provide adequate lighting and secure bathrooms at state park in order to prevent criminals from attacking guests was matter of policy decision-making and therefore shielded by sovereign immunity).

 Appellants alternatively argue that section 101.060(a)(2) of the Act "trumps" section 101.056. However, section 101.060(a)(2) deals with traffic or road signs, signals, and warning devices. TEX. CIV.PRAC. & REM.CODE ANN. § 101.060(a)(2) (Vernon 1997). The present case deals with a parking lot, and thus section 101.060(a)(2) is not applicable.

We conclude the trial court properly granted DPS's plea to the jurisdiction as to appellants' premises liability claims. Accordingly, we overrule appellants' issue three.

We affirm the judgment.

Justice MIRABAL concurring in part and dissenting in part.

MARGARET GARNER MIRABAL,
Justice, concurring and dissenting in part.

I respectfully dissent from the portion of the majority opinion dealing with the claims against Officer Kent and DPS involving the operation of the motor vehicle. I concur as to the premises liability claim against DPS.

## I. Use of Motor Vehicle Claim Against DPS

In issues one and four,[1] appellants complain the trial court erred when it granted DPS's plea to the jurisdiction based on its claim that the motor vehicle provision in the Texas Tort Claims Act does not act to waive DPS's sovereign immunity in this case.

**Scope and Standard of Review**

The Ramos and Garcia families sued DPS under the Texas Tort Claims Act. DPS asserted appellants did not adequately plead a cause of action for which it could be held liable because of sovereign immunity.

When a lawsuit is barred by sovereign immunity, the trial court lacks subject matter jurisdiction, and dismissal with prejudice is proper. *City of Austin v. L.S. Ranch, Ltd.*, 970 S.W.2d 750, 752 (Tex. App.—Austin 1998, no pet.). A plea to the jurisdiction is the proper method for a governmental entity to challenge subject matter jurisdiction based on sovereign immunity. *Id.; see also* TEX.CIV.PRAC. & REM. CODE ANN. § 51.014(a)(8) (Vernon Supp. 2000).

Our task is to examine the pleadings, to take as true the facts pleaded, and to determine whether those facts support jurisdiction in the trial court. *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex.1993); *City of Austin*, 970 S.W.2d at 753. We construe the pleadings in favor of the plaintiff. *Id.* If necessary, we may review the entire record to deter-

mine if there is jurisdiction. *Id.* We do not dismiss an action where a legitimate pleading amendment will demonstrate the court's jurisdiction. *Id.*

DPS is a governmental unit generally immune from tort liability except where that immunity has been specifically waived by the legislature. *City of LaPorte v. Barfield*, 898 S.W.2d 288, 291 (Tex.1995). The Act waives immunity in three specific areas: (1) injury caused by an employee's operation or use of a motor-driven vehicle; (2) injury caused by a condition or use of tangible personal property; and (3) injury caused by a condition or use of real property. TEX.CIV.PRAC. & REM.CODE ANN. § 101.021 (Vernon 1997). In the live pleadings at the time the trial court granted the amended plea to the jurisdiction (Plaintiff's Second Amended Petition and Intervenor's First Amended Petition), appellants alleged DPS is liable under all three categories. On appeal, appellants focus on categories one and three only.

**Discussion**

DPS asserted the motor-driven vehicle exception does not apply because Officer Kent did not drive the car, rather he was a passenger. Appellants alleged that although Cano was the driver of the car, Officer Kent actually controlled the car, as follows:

> Although Ms. Cano technically was the "driver" of the vehicle, Officer Kent and the DPS used and operated the vehicle to administer Ms. Cano's road test. Without this vehicle, the DPS and Officer Kent could not have administered the test; the test would not have taken place without the vehicle. Additionally, throughout this test, Officer Kent used and operated the vehicle through his commands and instructions to Ms. Cano, affirmatively directing Ms. Cano's actions and the direction of the vehicle. In this regard, Ms. Cano had no discretion to direct the vehicle, but instead

---

1. The majority opinion does not address issues one and four, because it considered its disposition under issue two to be determina-

tive. I disagree with the majority's disposition under issue two, for reasons set out hereafter.

this discretion and control was surrendered completely to Officer Kent and the DPS. Officer Kent also knew that Ms. Cano had to do what he told her, expected her to obey, and knew that she had "no discretion" to do otherwise. By the very nature of the test, Officer Kent and the DPS assumed the control and operation of the vehicle. If Ms. Cano failed to follow Officer Kent's commands, she would not have passed the test and could have received a citation, ticket, or otherwise been subjected to criminal and/or civil sanctions and penalties. Ms. Cano knew that she had to do what Officer Kent told her to do and she obeyed these commands, to the best of her ability, for fear of not passing the test, among others. In short, Officer Kent operated and used the Cano vehicle.

. . . .

Ms. Cano quickly proved to Officer Kent that she was not a good driver, but was in fact dangerous and unsafe. Officer Kent, even before returning to the DPS office, determined that she would not pass the road test.

In *County of Galveston v. Morgan*, 882 S.W.2d 485 (Tex.App.—Houston [14th Dist.] 1994, writ denied), the court held that a county employee who was directing the movements of a truck owned and driven by a private party on a road construction job was "using or operating" the truck for purposes under the Act. *Id.* at 490.

Likewise, the Corpus Christi Court of Appeals recently agreed with *Morgan* in *City of El Campo v. Rubio*, 980 S.W.2d 943 (Tex.App.—Corpus Christi 1998, pet. dism'd w.o.j.). *Id.* at 946–47. In *Rubio*, the plaintiff alleged that an El Campo police officer ordered an unlicensed driver to follow him to the police station and as a result, the unlicensed driver's car was struck by another vehicle and the unli-

censed driver was seriously injured. *Id.* at 946–47. The court held:

> [T]he City ignores the [plaintiffs'] allegations that [the driver] was acting under "direct orders" from [the police officer]. . . . We conclude that, by exercising control over the . . . vehicle, [the police officer] used or operated the vehicle. Accordingly, his conduct falls within the parameters of the Act and the City's immunity is waived.

*Rubio*, 980 S.W.2d at 946–47.

Similarly, in the present case, appellants' pleadings contained allegations supporting the claim that the injury was caused by Officer Kent's "operation or use of a motor-driven vehicle." The pleadings are sufficient to support jurisdiction in the trial court. I would sustain appellants' issues as to the claim against DPS under the motor vehicle exception (issues one and four).

## II. Claims Against Officer Kent

In issue two, appellants complain the trial court erred in granting Officer Kent's motion for summary judgment in which Officer Kent asserted the claims against him must be dismissed under the affirmative defense of official immunity. DPS rightly asserted as an alternative ground in its plea to jurisdiction that, if Officer Kent established the defense of official immunity, then no liability could attach to DPS, Kent's employer, with regard to the claim involving the operation of the motor vehicle. *See DeWitt v. Harris County*, 904 S.W.2d 650, 653–54 (Tex.1995).

### Discretionary v. Ministerial

Appellants assert Officer Kent failed to establish the first element of official immunity, that his duties were discretionary.[2] Appellants argue Kent's duties at the time of the accident were ministerial.

---

**2.** The three elements of official immunity are: (1) performance of discretionary duties, (2) in good faith, (3) while acting in the course and scope of employment. *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex.1994).

The majority opinion concludes Kent was engaging in discretionary acts at the time of the accident. I disagree.

The summary judgment evidence shows that Officer Kent had completed administering the standard road test when the accident occurred. Appellants concede that Kent was performing discretionary duties when he was conducting the driving test on the roadways, *i.e.*, when he was directing Ms. Cano during the road test. However, appellants argue that once they had returned to the DPS office parking lot, all that remained to be done was the parking of the car, which did not involve discretionary actions by Kent.

Officer Kent relies primarily on *Chambers*, in which the Texas Supreme Court held that a police officer engaging in a high-speed chase was performing a discretionary act. *City of Lancaster v. Chambers*, 883 S.W.2d 650, 655 (Tex.1994). In reaching this conclusion, the Court also indicated that, under other circumstances, such as when conducting a raid, a police officer engages in discretionary acts. *Chambers*, 883 S.W.2d at 654–55; *see also Wadewitz v. Montgomery*, 951 S.W.2d 464, 466 (Tex.1997) (the parties did not dispute that an officer responding to an emergency was performing a discretionary act). The present case, involving the parking of a car in the parking lot, does not fit within the examples of discretionary acts in *Chambers* and *Wadewitz*.

Appellants rely on a series of cases involving officers and other government employees operating vehicles in non-emergency situations to support their assertion that Officer Kent was performing a ministerial act when he directed Cano to park the car. *See, e.g., City of Wichita Falls v. Norman*, 963 S.W.2d 211, 215 (Tex.App.—Fort Worth 1998, pet. dism'd w.o.j.) (concluding that a motorcycle patrol officer on routine duty when he hit a car was performing a ministerial act); *Woods v. Moody*, 933 S.W.2d 306, 308 (Tex.App.—Houston [14th Dist.] 1996, no writ) (holding that a deputy driving a car under routine circumstances was performing a ministerial duty); *Garza v. Salvatierra*, 846 S.W.2d 17, 22 (Tex.App.—San Antonio 1992, writ dism'd w.o.j.) (driving a city bus is ministerial although it involves traffic judgment). In *Norman*, the court explained:

> Situations where peace officers have been found to have official immunity in the operation of their motor vehicles include, but are not limited to, high speed chases, investigations, and traffic stops.... Operating a car or motorcycle in a non-emergency situation, unlike a high speed chase or traffic stop, does not require personal deliberation or the exercise of professional expertise, decision, or judgment involving the government.... To the contrary, operating a motor vehicle is ministerial because it requires a person to "perform[ ] in a given state of facts and in a prescribed manner in obedience to the method of legal authority, without regard to his own judgment on the propriety of the act being done." *Burgess*, 914 S.W.2d at 249 (*quoting Miller*, 53 S.W.2d at 840)....
>
> Motorcycle police officers, like ordinary citizens, must obey traffic laws in operating their vehicles. They do not have discretion in determining whether the duty exists to follow such regulations.

*Norman*, 963 S.W.2d at 215–16 (emphasis omitted) (citations omitted).

Our focus in the present case is on whether Officer Kent was performing a discretionary function after the car had entered the DPS parking lot, and all that remained to be done was the parking of the car. Kent's operation of the vehicle at that point did not require personal deliberation or the exercise of judgment on the propriety of the act being done. The process of parking the car was a ministerial act. *See, e.g., Norman*, 963 S.W.2d at 215; *Woods*, 933 S.W.2d at 308; *Garza*, 846 S.W.2d at 22.

I note that Kent also relies on *Chapman v. Gonzales*, 824 S.W.2d 685 (Tex.App.— Houston [14th Dist.] 1992, writ denied), where the court held an employee administering a pre-employment fitness test was engaging in discretionary acts. *Id.* at 687–88. However, *Chapman* is distinguishable from the present case because the injury suffered in *Chapman* occurred while the employee was still performing discretionary duties. *See id.* at 686–87.

I would hold that Officer Kent failed to establish that he was performing a discretionary duty at the time of the accident. Because, in my opinion, summary judgment was improper on this basis, it is not necessary to address the good faith element of official immunity. I would sustain issue two.

I would affirm the portion of the order granting DPS's plea to the jurisdiction as to appellants' premises liability claims. I would reverse the remainder of the order granting DPS's plea to the jurisdiction, reverse the summary judgment in favor of Officer Willie Kent, and remand the reversed portions of the case to the trial court.