**Opinion issued August 16, 2012.**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-11-01068-CV

———————————

**THE CITY OF HOUSTON, Appellant**

**V.**

**BRETT HATTON, Appellee**

———

On Appeal from the 133rd District Court
Harris County, Texas
Trial Court Case No. 2011-04420

———

**MEMORANDUM OPINION**

This lawsuit against the City arises out of a car accident involving a police patrol car that was en route in response to an officer's call for assistance. Hatton sued under the Texas Tort Claims Act, claiming that the Act's waiver of immunity

applied and that the City was liable for damages. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.055(1) (West 2011). The City filed a plea to the jurisdiction, seeking dismissal based on governmental immunity, which, after hearing, the trial court denied. We reverse and render judgment dismissing the suit for lack of jurisdiction.

## Background

### *Events leading to lawsuit*

Late one evening in July 2009, HPD Officer R. Johnson was on duty, patrolling in northwest Houston near Antoine Drive. He heard a request for backup on the police radio. HPD policy classifies this particular "assist the officer call" as Priority One—the highest priority call. HPD's order issued in connection with that policy "assumes that a potential threat to life or the potential threat of serious bodily injury is in progress." A patrol officer responding to a Priority One call must use the vehicle's overhead lights and siren and proceed to the location immediately. Johnson activated his emergency lights and sirens and, after some deliberation, decided to take Antoine to the incident location.

Meanwhile, Hatton, an off-duty police officer, was driving on Antoine. He noticed an approaching patrol car with its sirens and emergency lights on. Hatton pulled to the side of the road to let the patrol car pass. After it passed, Hatton checked his rear-view mirrors before resuming travel. He then saw a second patrol

2

car—Officer Johnson's—approaching. As Officer Johnson's car neared, Hatton heard tires screeching. He turned to see the patrol car swerve in the road, then strike the back of his car.

## *Proceedings in the trial court*

In January 2011, Hatton sued the City of Houston, claiming that Officer Johnson's negligence and negligence per se resulted in the accident and caused him injuries. The City responded with a plea to the jurisdiction, invoking governmental immunity and seeking dismissal of Hatton's claims for lack of subject matter jurisdiction. In his response, Hatton contended that the Texas Tort Claims Act waived the City's immunity from suit, because the accident resulted from Officer Johnston's ministerial actions and he failed to act in good faith.

## Discussion

## I.     *Standard of review*

Texas statute allows a party aggrieved by a trial court's interlocutory order granting or denying a plea to the jurisdiction the right to appeal that decision. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 51.014(a)(8) (West Supp. 2011); *see id.* § 101.001(3)(D) (West 2011). We review the trial court's ruling on a plea to the jurisdiction de novo. *State v. Holland*, 221 S.W.3d 639, 642 (Tex. 2007) (citing *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex. 2004)). The plaintiff must allege facts that affirmatively establish the trial court's subject

3

matter jurisdiction. *Id.*; *City of Pasadena v. Kuhn*, 260 S.W.3d 93, 95 (Tex. App.—Houston [1st Dist.] 2008, no pet.). In determining whether the plaintiff has satisfied this burden, we construe the pleadings liberally in the plaintiff's favor and deny the plea if the plaintiff has alleged facts affirmatively demonstrating jurisdiction to hear the case. *Miranda*, 133 S.W.3d at 226–27; *Smith v. Galveston Cnty.*, 326 S.W.3d 695, 698 (Tex. App.—Houston [1st Dist.] 2010, no pet.).

If the plea to the jurisdiction challenges the existence of jurisdictional facts, the trial court must consider relevant evidence submitted by the parties. *Miranda*, 133 S.W.3d at 227. When the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law. *Id.* at 228. If, however, the evidence creates a fact question regarding jurisdiction, then the trial court must deny the plea and leave resolution of the fact issue to the fact-finder. *Id.* at 227–28. In reviewing the evidence presented, we take as true all evidence favorable to the plaintiff, indulging every reasonable inference in the plaintiff's favor. *Id.* at 228.

## II. *Governmental immunity*

Under the doctrine of governmental immunity, political subdivisions of the State, including municipalities, cannot be held liable for the actions of their employees unless a constitutional provision or statute waives that immunity. *See, e.g.*, *City of Houston v. Williams*, 353 S.W.3d 128, 134 (Tex. 2011); *City of*

4

*Lancaster v. Chambers*, 883 S.W.2d 650, 658 (Tex. 1994). The Texas Tort Claims

Act waives governmental immunity in limited circumstances. *See Dep't of (Tex.*

*Crim. App. Justice v. Miller,* 51 S.W.3d 583, 587 (Tex. 2001). Section 101.021 of

the Act provides:

> A governmental unit in the state is liable for:
>
> (1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:
>
>> (A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and
>>
>> (B) the employee would be personally liable to the claimant according to Texas law; and
>
> (2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

TEX. CIV. PRAC. & REM. CODE ANN. § 101.021 (West 2011). The Act also

enumerates exceptions to the waiver of immunity. *See id.* §§ 101.051–.067 (West

2011).

Because the Act provides that a governmental unit may only be liable when

"the [negligent] employee would be personally liable to the claimant," whether the

employee is entitled to official immunity also affects whether the Act's limited

waiver of governmental immunity applies. *Id.* § 101.021(1)(B); *see DeWitt v.*

5

*Harris Cnty.*, 904 S.W.2d 650, 653 (Tex. 1995). "If the employee is protected from liability by official immunity, the employee is not personally liable to the claimant and the government retains its sovereign immunity under subsection 1." *DeWitt*, 904 S.W.2d at 653 (citing *K.D.F. v. Rex*, 878 S.W.2d 589, 597 (Tex. 1994), and *City of Houston v. Kilburn*, 849 S.W.2d 810, 812 (Tex. 1993)). "A governmental employee is entitled to official immunity: (1) for the performance of discretionary duties; (2) within the scope of the employee's authority; (3) provided the employee acts in good faith." *Univ. of Houston v. Clark*, 38 S.W.3d 578, 580 (Tex. 2000); *City of Lancaster v. Chambers*, 883 S.W.2d 650, 654 (Tex. 1994). Hatton does not dispute that Officer Johnson was acting in the course and scope of his employment as an HPD officer, but asserts that the City is not immune because Johnson was performing ministerial acts or, alternatively, that he did not perform his discretionary acts in good faith.

### A. *Discretionary or ministerial duties?*

In response to the City's plea, Hatton challenged the City's claim that Johnson was performing discretionary duties when the collision occurred. "If an action involves personal deliberation, decision, and judgment, it is discretionary; an action that requires obedience to orders or the performance of a duty to which the employee has no choice is ministerial." *Ramos v. Tex. Dep't of Pub. Safety*, 35 S.W.3d 723, 727 (Tex. App.—Houston [1st Dist.] 2000, pet. denied) (citing

6

*Chambers*, 883 S.W.2d at 654); *accord City of Dallas v. Brooks*, 349 S.W.3d 219, 225 (Tex. App.—Dallas 2011, no pet.). In determining whether an act is discretionary, the issue is whether an employee was performing a discretionary function, not whether he had the discretion to do an allegedly wrongful act while discharging that function or whether the employee's job description includes discretionary duties. *Ramos*, 35 S.W.3d at 727 (citing *Chambers*, 883 S.W.2d. at 653).

Hatton contends that Johnson's operation of the patrol vehicle in responding to a Priority One call to assist another officer is a ministerial act, because he had no choice but to respond to the call, and his actions thus involved "traffic judgment" only. Simple, nonemergency driving by a police officer while on official business is a ministerial act that does not entitle the officer to official immunity. *Harris Cnty. v. Gibbons*, 150 S.W.3d 877, 886 (Tex. App.—Houston [14th Dist.] 2004, no pet.). In some situations, though, an officer's operation of a vehicle "involves personal deliberation or the exercise of professional expertise, decision, or judgment." *Brooks*, 349 S.W.3d at 225. Examples of discretionary activities include high-speed chases, investigations, traffic stops, and an officer's decision to violate traffic laws to respond as quickly as possible to an officer's call for assistance. *See, e.g.*, *Chambers*, 883 S.W.2d at 655 (deeming officer's decision to undertake and conduct high-speed pursuit of suspect a discretionary function);

7

*Brooks*, 349 S.W.3d at 222 (holding that police officer who had accident while en route to "Code 1 call for cover" from another police officer requesting backup for a combative, suicidal person was performing discretionary function); *Harless v. Niles*, 100 S.W.3d 390, 398 (Tex. App.—San Antonio 2002, no pet.) (holding that officer's decision to violate traffic laws in order to quickly reach scene of suspected criminal activity and assist another officer there was discretionary act); *see also City of San Angelo Fire Dep't v. Hudson*, 179 S.W.3d 695, 704 (Tex. App.—Austin 2005, no pet) (holding that manner of firefighter's driving in response to emergency situation was discretionary function as matter of law); *City of Houston v. Flaniken*, 108 S.W.3d 555, 557 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (holding that operation of ambulance in response to emergency situation was discretionary function as matter of law). Here, like the firefighter in *Hudson* and the ambulance driver in *Flaniken*, Johnson had no choice but to respond to the Priority One request for assistance. In responding to the orders, however, Johnson, like the other drivers, relied on his professional experience and expertise in judging the traffic, weather conditions, and alternative routes to determine the safest and most expedient way to reach his destination. The requirement that Johnson operate the patrol car with the emergency lights and sirens activated underlines the fact that he was not constrained by the ordinary traffic rules, but rather was required to use his professional judgment in responding

8

to the call.  We hold that Johnson was performing a discretionary act when the accident occurred.

### *Good faith*

The parties further contest whether Johnson acted in good faith.  The good-faith standard is not the equivalent of a general negligence test, which addresses what a reasonable person would have done—it is more lenient, giving "ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law."  *Chambers*, 883 S.W.2d at 656 (quoting *Swint v. City of Wadley*, 5 F.3d 1435, 1441–42 (11th Cir. 1993)), *quoted in Tex. Dept. of Pub. Safety v. Rodriguez*, 344 S.W.3d 483, 490 (Tex. App.—Houston [1st Dist.] 2011, no pet.).  To prevail on the good-faith requirement for official immunity, the City must show that a reasonably prudent officer in the same or similar circumstances might have believed that the action should have been taken. *Junemann v. Harris Cnty.*, 84 S.W.3d 689, 694 (Tex. App.—Houston [1st Dist.] 2002, pet. denied) (citing *Chambers*, 883 S.W.2d at 657–58).  To defeat that proof at this stage in the proceedings, the plaintiff must raise a fact issue suggesting that no reasonably prudent officer in the same position would have considered that the facts warranted the acting officer's conduct.  *Ballantyne v. Champion Bldrs., Inc.*, 144 S.W.3d 417, 426 (Tex. 2004), *cited in Rodriguez*, 344 S.W.3d at 490; *Junemann*, 84 S.W.3d at 694.  The plaintiff's evidence must address the degree,

9

likelihood, and obviousness of the risks created by the officer's actions. *Junemann*, 84 S.W.3d at 694. (citing *Wadewitz v. Montgomery*, 951 S.W.2d 464, 467 (Tex. 1997)).

This good-faith test requires us to balance the need for intervention with the countervailing severity of potential public safety concerns. *Rodriguez*, 344 S.W.3d at 488 (citing *Univ. of Houston v. Clark*, 38 S.W.3d 578, 581 (Tex. 2000)); *Junemann*, 84 S.W.3d at 693–94 (citing *Wadewitz*, 951 S.W.2d at 467). In reviewing the officer's actions, we consider (1) the seriousness of the crime or accident to which the officer is responding, (2) whether the officer's immediate presence is necessary to prevent injury or loss of life or to apprehend a suspect, and (3) what alternative courses of action, if any, were available to achieve a comparable result. *Wadewitz*, 951 S.W.2d at 467. In assessing the countervailing public safety concerns, we consider (1) the nature and severity of the harm the officer's actions could cause, (2) the likelihood that any harm would occur, and (3) whether the risk of harm would be clear to a reasonably prudent officer. *Id.*

In Johnson's affidavit, accompanying the City's plea to the jurisdiction, he averred that:

- The night of the accident, the weather was clear and dry, and the traffic was very light.

- Officer Johnson chose Antoine as the preferred route because it is a major thoroughfare, was paved, was lit by overhead street lights, and

10

would allow him to drive directly to the dispatch location, an apartment complex a few miles away.

- Officer Johnson was aware that, in the past two years, two officers had been shot, one fatally, at the same apartment complex.

- He was traveling above the posted speed limit at a speed at which he felt he could safely maneuver.

- Officer Johnson noticed Hatton's car stopped in the right lane ahead when he arrived at a "jog" or curve in the road he had not previously noticed.

- His tire hit the curb and he attempted to slow down the patrol car.

- Right after the curve, the street lanes narrowed as they passed over a bridge.

- Officer Johnson attempted to steer his car back into the left lane, but was unable to regain control before striking Hatton's car.

The City also provided an affidavit from Sergeant M. Reutzel, a nineteen-year HPD veteran. Sergeant Reutzel was Officer Johnson's direct supervisor and the first officer who arrived at the accident scene. Sergeant Reutzel testified that he had a chance to observe the accident scene and the placement and damage to the cars. He reviewed the accident investigation report, including Hatton's and Johnson's statements. Sergeant Reutzel opined that:

> Based on the statements of both officers in the police report and the findings of the investigative officer, the actions of Officer Johnson, immediately prior to accidentally striking the curb, were within the protocols for responding to a Priority 1 "assist the Officer" call.
>
> . . . .

11

> If given the same assignment in the same or similar conditions, another reasonably prudent Texas peace officer could have chosen to travel on Antoine to reach the call location, could have scanned the area to make sure that other vehicles were yielding to the emergency vehicle, could have missed the jog or curve in the roadway, and could have attempted to regain control of the patrol vehicle in the same or similar manner as Officer Johnson.

In addition, a third affidavit supported the City's plea to the jurisdiction. Lieutenant Kennedy, who has served with the Houston Police Department for nearly thirty years, reviewed the accident report and Johnson's statement and also opined that Johnson was acting in good faith when the accident occurred.

In opposition to the City's evidence, Hatton claims that Johnson's failure to notice the curve in Antoine before the bridge calls into question the reasonableness of his decision to take that route. Hatton also faults Johnson's decision to travel at speeds above the posted limit. Relying on *Harless*, Hatton contends Johnson was not justified in using excessive speed because another officer was already en route to the dispatch location ahead of him. *See Harless*, 100 S.W.3d at 399–400 (finding fact issue on good faith because no evidence supported officers' "subjective beliefs about the alleged seriousness of the crime to which they were responding, or whether their immediate presence was necessary to prevent injury or loss of life or to apprehend a suspect"; officers decided to follow another officer who had been dispatched to investigate report of suspicious activity, possibly burglary). The record, however, does not show that Johnson was aware of the

12

patrol car ahead of him or whether any other patrol car was likely to arrive at the dispatch location ahead of him. Officer Johnson and Sergeant Reutzel both testified that the weather conditions, light traffic, and urgency of the call justified Johnson's speed. Hatton fails to raise a fact issue as to whether no reasonably prudent officer in the same position could have considered that the facts justified the acting officer's conduct. The evidence shows that Officer Johnson acted in good faith. We therefore hold that official immunity protects Johnson; consequently, sovereign immunity protects the City from Hatton's suit.

## Conclusion

The trial court erred in denying the City's plea to the jurisdiction. We therefore reverse the order of the trial court and render judgment dismissing Hatton's suit for lack of jurisdiction.


Jane Bland
Justice

Panel consists of Justices Bland, Massengale, and Brown.